# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF OHIO

### EASTERN DIVISION

| | | |
|---|---|---|
| SMITH LAND COMPANY, INC., et al., | ) | CASE NO. 5:21-cv-1848 |
| | ) | |
| Plaintiffs, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM ORDER AND** |
| THE CITY OF FAIRLAWN, OHIO, et al., | ) | **OPINION** |
| | ) | |
| Defendant. | ) | |

Before the Court is Defendant Ohio Environmental Protection Agency ("Ohio EPA") and Defendant Ed Wilk's ("Wilk") Motion to Dismiss (ECF No. 28) Plaintiffs Smith Land Company ("SLC") and Robert G. Smith's ("Smith") Amended Complaint (ECF No. 19).  For the reasons discussed below, the Motion is **GRANTED**.

## I.    BACKGROUND

### A.  Factual Background

The allegations in this action  arise from the subdivision, sale, designation as wetlands of, and fill material placement on real property owned by Plaintiffs.  (ECF No. 19., Am. Compl. at PageID #389).  Plaintiffs' allegations are as follows:

### 1.  Purchase and Subdivision of the Property

SLC purchased and sought to subdivide 9.7 acres of real property on Brunsdorph Drive in Fairlawn, Ohio (the "Property") in 1999.  (*Id.* at PageID #390-91).  To do so, SLC applied to Defendant City of Fairlawn ("Fairlawn") to subdivide the property into ten single-family residential lots and Block A.  (*Id.* at PageID #391).  Fairlawn determined the Property contained isolated wetlands, subject to the jurisdiction of the United States under the Clean Water Act (the "CWA").  (*Id.*).  To subdivide the Property, Fairlawn required a 404 Permit from the U.S. Army

Corps of Engineers (the "USACE") to fill or impact the isolated wetlands.  (*Id*.).  On April 14, 2000, SLC obtained a 404 Permit from the USACE and a 401 Permit from the Ohio EPA, both of which were valid until February 11, 2002.  (*Id*.).

When SLC sought to further subdivide Block A into three single-family residential parcels, it provided a copy of the 404 Permit to Fairlawn.  (*Id*.).  Fairlawn approved the subdivision of Block A on April 18, 2000 and SLC filed deeds approved by Fairlawn subdividing Block A into three parcels on May 19, 2000.  (*Id*.).

### 2.  Supreme Court Decision

On January 9, 2001, the Supreme Court decided *Solid Waste Agency of Northern Cook Cty. v. Army Corps of Engineers*, 531 U.S. 159 (2001).  (*Id*.).  The Supreme Court held that the migratory bird rule, which purported to extend jurisdiction of isolated wetlands on the Property to the USACE, exceeded the authority granted under the CWA.  (*Id*.).  Thus, the isolated wetlands on the Property were no longer within the jurisdiction of the USACE.  (*Id*. at PageID #392).

### 3.  Fairlawn Fills Block A

In February 2001, a road contractor for Fairlawn dumped fill on two parcels in Block A.  (*Id*. at PageID #391-92).  Smith complained to Fairlawn that the dumping was unauthorized, and Fairlawn sent the contractor to grade the dumped fill.  (*Id*. at PageID #392).  Plaintiffs allege they were never given the opportunity to challenge Fairlawn's dumping of fill.  (*Id*. at PageID #400).  On July 17, 2001, Ohio enacted a permanent permitting process for impacting isolated wetlands, O.R.C. § 611.02-029.  (*Id*.).

### 4.  Sale of Property

Defendants Shawn A. Herhold ("Herhold") and Malavanh D. Rassavong ("Rassavong") contracted to purchase a Block A parcel (the "Herhold Parcel") on July 11, 2002.  (*Id*.).  The contract included a disclosure noting the Herhold Parcel had been designated as a wetland.  (*Id*.).

On March 26, 2003, Timothy and Dawn Kensinger (collectively the "Kensingers") contracted to purchase a Block A parcel (the "Kensinger Parcel"). (*Id*. at PageID #393). The contract did not include a disclosure noting that the Kensinger Parcel had been designated as a wetland. (*Id*. at PageID #394).

In November 2003, William J. Roth ("Roth"), Mayor of Fairlawn, wrote the USACE enquiring as to whether future owners of the Block A parcels would have to acquire USACE authorization to impact wetlands on the parcels. (*Id*. at PageID #393). The USACE responded on February 4, 2004, stating that a USACE permit was not required for impacts to wetlands on Block A and advising to contact the Ohio EPA to determine the state permit requirements.[1] (*Id*.). On February 9, 2004, the Ohio EPA informed Fairlawn that owners of the Block A parcels will need to apply for and receive an Isolated Wetland Permit ("IWP") before impacting isolated wetlands.[2] (*Id*. at PageID #393-34).

### 5.  The Kensinger Lawsuit

The Kensingers applied to Fairlawn for a building permit and Fairlawn denied the application, requiring the fill previously deposited by Fairlawn's contactor to be removed. (*Id*. at PageID #394). The Kensingers sued Plaintiffs for breach of contract, stating that they were not aware that the Kensinger Parcel was a designated wetland that required a USACE permit in order to obtain a building permit from Fairlawn. (*Id*.). Plaintiffs settled with the Kensingers and bought the Kensinger Parcel back upon learning that its realtor did not provide the Kensingers with the wetland disclosure. (*Id*.).

---

[1] ECF No. 19-2, USACE-Fairlawn Letter at Page ID#430-31.
[2] ECF No. 19-3, Ohio EPA-Fairlawn Letter at Page ID#432.

### 6.  Herhold Lawsuit One

On May 9, 2008, Herhold and Rassavong also sued the Plaintiffs for breach of contact and fraud in state court.  (*Id*. at PageID #395).  The Plaintiffs refused to buy the Herhold Parcel back because Herhold and Rassavong were provided with a wetland disclosure, a USACE permit was issued for the fill Fairlawn's contractor dumped on the parcel, and Fairlawn authorized the dumping.  (*Id*.).  The Plaintiffs moved to dismiss and were denied, and in 2014, the case went to a jury trial and judgment was for Herhold and Rassavong.  (*Id*.).  Thereafter, the judge recused, and a new trial was ordered.  (*Id*.).

### 7.  Ohio EPA Public Records

After Herhold Lawsuit One, on May 4, 2015, Smith made a public records request to the Ohio EPA for all records of Wilk.  (*Id*. at PageID #398).  Included in the records were Wilk's calendar, notes, and letters.  (*Id*. at PageID #399).

#### a.  The Wilk-Randles Letter

Wilk met with Herhold and Rassavong at the Herhold Parcel on May 27, 2005.  (*Id*.).  On May 31, 2005, Wilk wrote a letter to Chris Randles ("Randles"), an employee of the Fairlawn Building and Zoning Department.[3]  (*Id*.).  The Wilk-Randles Letter stated that after walking the Herhold Parcel, Wilk determined that the fill was mostly on the neighboring property to the north of the Herhold Parcel and some fill activity occurred on the north boundary of the Herhold Parcel.  (*Id*.).  Wilk also stated the amount of over-fill on the Herhold Parcel is minimal compared to the adjacent property and removal of the over-fill is not required as long as the area is used as a buffer zone between the fill permitted on the Herhold Parcel and the wetlands that should not have been filled. (*Id*.).  The Wilk-Randles Letter was sent to Herhold.  (*Id*.).

---

[3] ECF No. 19-4, Wilk-Randles Letter at Page ID#433.

### b.  The Wilk-Herhold Letter

On October 24, 2005, Wilk wrote Herhold.[4]  (*Id*. at PageID #400).  The Wilk-Herhold Letter stated that the fill previously dumped on the Herhold Parcel failed to comply with the USACE limits.  (*Id*.).  It further stated that SLC overfilled the wetlands at the north property boundary and since then, the wetlands have been determined to be regulated by the Ohio EPA. (*Id*.).  Wilk further stated "your decision was to have the excessive fill properly removed off site. I have visited the site numerous times providing direction during the project." (*Id*.).  He also stated that he visited the Herhold Parcel on the date of the letter to inspect the work and the excess fill was removed, but it must also meet the conditions and approval of the Fairlawn Building and Zoning Department.  (*Id*.).

Plaintiffs allege they were never notified of a claim of overfill on the Herhold Parcel, any violation of the USACE permit and/or the Ohio EPA regulation, or any enforcement action being taken due to the overfill.  (*Id*. at PageID #400, 403).  They allege they first learned of the overfill when they were served with a copy of the complaint for Herhold Lawsuit One.  (*Id*. at PageID #403).

### c.  The Wilk-White Tail Letter

On March 28, 2007, Wilk wrote to a property owner on White Tail Ridge Road in Fairlawn regarding the property owner's concern about the wetlands behind the homes on White Tail Ridge Road that border the homes on Brunsdorph Road.[5]  (*Id*. at PageID #409).  Wilk stated he visited the area on March 21, 2007 and verified the conditions of the wetlands.  (*Id*.).  He also stated that the USACE issued a permit allowing the fill of wetlands along the properties on Bunsdorph Road and any additional impacts to wetlands will require a 401 permit from the Ohio EPA.  (*Id*.).

---

[4] ECF No. 19-5, Wilk-Herhold Letter at Page ID#434.
[5] ECF No. 19-7, Wilk-White Tail Letter at PageID #436.

### d.  Notice of Violation

On February 24, 2016, Wilk issued a Notice of Violation ("NOV") against Plaintiffs for unauthorized fill on both of the Block A parcels they owned.[6]  (*Id*.).  Plaintiffs allege that Wilk issued the NOV in retaliation for Plaintiffs' public records request.  (*Id*.).  Plaintiffs allege the NOV was mailed to Smith at an old address, where he no longer resided, and he did not receive it. (*Id*.).  Plaintiffs allege that Wilk issued the NOV to deliberately and unlawfully encumber Plaintiffs' parcels so that they could not be used for a single-family residence and prevent Plaintiffs from marketing and selling their parcels.  (*Id*. at PageID #411).

### 8.  Herhold Lawsuit Two

The second trial was in July 2017.  (*Id*.).  Wilk was designated as the Ohio EPA's representative.  (*Id*.).  Wilk testified that he is an Ohio EPA 401 Coordinator and his job duties include reviewing 401 permit applications, conducting pre-application meetings, reviewing complaints of unauthorize fill, and enforcement.  (*Id*. at PageID #398).  Wilk also testified to the measurements of the overfill and that mitigation was available in 2005 for $35,000 per acre, approximately $442 for the Herhold Parcel. (*Id*. at PageID #403).  Plaintiffs allege they were not notified of Wilk's involvement with the Herhold Parcel.  (*Id*.).  Wilk also testified that the USACE would handle any violations on the Herhold Parcel until 2004.  (*Id*. at PageID #410).

On September 19, 2017, the court issued a final order of judgment for Herhold and Rassavong.  (*Id*.).  Plaintiffs filed a motion for judgment notwithstanding the verdict and new trial that was denied on November 30, 2017.  (*Id*.).  The Ohio Ninth District Court of Appeals affirmed the judgment on June 19, 2019.  (*Id*.).  The Ohio Supreme Court declined jurisdiction on October 15, 2019, and the U.S. Supreme Court denied certiorari on June 8, 2020.  (*Id*.).

---

[6] ECF No. 19-8, NOV at PageID #437.

### 9.  Post-Lawsuit

After the second Herhold Trial, on September 28, 2017, Plaintiffs allege that they received two Google Earth Pro photos (the "Block A Photos"), dated April 9, 2005 and February 28, 2006, respectively.  (*Id*. at PageID #404).  Plaintiffs allege the Block A Photos show what Block A looked like before Herhold and Rassavong removed the overfill from the Herhold Parcel and after. (*Id*. at PageID #404-05).  Plaintiffs assert the Block A Photos show that dirt from the Herhold Parcel was improperly removed and dumped on SLC's parcel.  (*Id*. at PageID #405).  Plaintiffs contend that Wilk oversaw the improper removal of dirt from the Herhold Parcel and dumping on SLC's parcel.  (*Id*.).  Plaintiffs claim the Block A Photos also show that homes built to the south of the Herhold Parcel have filled in wetlands.  (*Id*.).  Plaintiffs aver  that the Block A Photos support their claim that Fairlawn, Roth, Randles, Wilk, Herhold, and Rassavong engaged in conduct that constitute or contributed to trespass on their parcel.  (*Id*. at PageID #406).

### 10.  Claims Against the Ohio EPA and/or Wilk

Count One of the Amended Complaint is brought under 42 U.S.C. § 1983, and alleges that Fairlawn, Roth, Randles, Wilk, Herhold, and Rassavong conspired to deprive Plaintiffs of their interest in the Property.  (ECF No. 19, Am. Compl. at PageID #414-16).

Count Two of the Amended Complaint is brought under 42 U.S.C. § 1985(3), and alleges that Fairlawn, Roth, Randles, Wilk, Herhold, Rassavong, and Skidmore conspired to deprive Plaintiffs of equal protection of the law by conspiring to deprive them of their interest in the Property.  (*Id*. at PageID #417-18).

Count Three of the Amended Complaint is brought under 28 U.S.C. § 1367 for civil conspiracy under Ohio law.  (*Id*. at PageID #418).  Plaintiff alleges that Fairlawn, Roth, Randles, Wilk, Herhold, and Rassavong conspired to obtain a civil judgment against Plaintiffs in Herhold Lawsuit Two, based on fabrication of a need to properly remove overfill from the Herhold Parcel.

Plaintiffs allege a conspiracy to commit fraud, trespass, and take property, including a judgment against Plaintiffs for $284,889.29 plus interest.  (*Id*. at PageID #418-20).

Count Six of the Amended Complaint is brought under Section 1983 and 28 U.S.C. § 1331, alleging that Wilk deprived Plaintiffs of their private property, in violation of the Fifth Amendment Takings Clause.  (*Id*. at PageID #422-24).

Count Seven of the Amended Complaint is a request for permanent prospective injunction against the Ohio EPA, Wilk, and Fairlawn, requesting this Court to permanently enjoin them from enforcing or penalizing them based on the NOV.  (*Id*. at PageID #424-25).

Count Nine of the Amended Complaint is a request for exemplary punitive damages against Fairlawn, Roth, Randles, Wilk, Herhold, and Rassavong for their alleged conduct constituting "conspiracy to commit fraud, trespass, and taking of [their parcels]," and denying Plaintiffs "of equal protection of the law to commit trespass and the physical taking of [their parcels]."  (*Id*. at PageID #425-26).

Plaintiffs bring all claims against Wilk in his individual capacity only.  (ECF Nos. 19, Am. Compl. at PageID #390; 31, Opp. at PageID #871).

### B. Procedural Background

Plaintiffs filed this action on September 28, 2021.  (ECF No. 1, Compl.).  Plaintiffs subsequently filed an Amended Complaint on December 27, 2021.  (ECF No. 19, Am. Compl.). The Ohio EPA and Wilk filed their Motion to Dismiss the Amended Complaint (ECF No. 28) on January 14, 2022.  Plaintiffs filed their Opposition (ECF No. 31) on February 14, 2022.  The Ohio EPA and Wilk filed their Reply in Support of the Motion (ECF No. 34) on February 28, 2022.

## II.    LEGAL STANDARD

### A.  Federal Rule of Procedure 12(b)(1)

Federal courts have limited jurisdiction and possess only that power authorized by the U.S. Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994). Claims are presumed to lie outside this limited jurisdiction and the burden to establish jurisdiction rests upon the party asserting jurisdiction. *Id.* A party may move to dismiss a claim against it when the Court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). In fact, "[i]f th[is] [C]ourt determines at any time that it lacks subject-matter jurisdiction, th[is] [C]ourt must dismiss the action." Fed. R. Civ. P. 12(h)(3). "Sovereign immunity is jurisdictional in nature and deprives th[is] [C]ourt[] of subject-matter jurisdiction where applicable." *Moher v. U.S.*, 875 F. Supp. 2d 739, 753 (W.D. Mich. 2012) (citing *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)).

### B.  Federal Rule of Procedure 12(b)(6)

A party may move to dismiss a claim against it when the claimant has "failed to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A 12(b)(6) motion to dismiss tests the complaint's legal sufficiency. *Riddle v. Egensperger*, 266 F.3d 542, 550 (6th Cir. 2001). A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the Complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555. The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-Defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In

reviewing a Complaint, the Court must construe the pleading in the light most favorable to the Plaintiff.  *Bibbo v. Dean Witter Reynolds, Inc*., 151 F.3d 559, 561 (6th Cir.1998).

### III.    LAW AND ANALYSIS
#### A.  Claims Against the Ohio EPA

##### 1.  Failure to State a Claim

Defendants argue that Counts One, Two, and Three fail to state a claim for relief  because Plaintiffs fail to allege facts to show that the Ohio EPA engaged in conduct that could have deprived Plaintiffs of their federally protected rights.  (ECF No. 28, Mot. to Dismiss at PageID #750).  Similarly, Defendants assert Claims Four, Five, and Six fail to state a claim for relief because Plaintiffs fail to allege facts to show that the Ohio EPA committed a taking.  (*Id*. at PageID #755-56).

In their Opposition, Plaintiffs state "the only claim asserted against the Ohio EPA, in the [C]omplaint, is the request for prospective injunctive relief for Wilk's unlawful issuance of [the NOV]."  (ECF No. 31, Opp. at PageID #870).  Plaintiffs also state that Count Six is against Wilk individually.  (ECF No. 31, Opp. at PageID #871).  Accordingly, there are no §1983 deprivation of rights claims, §1985(3) conspiracy claims, or §1983 takings claims alleged against the Ohio EPA.  Therefore, Ohio EPA's arguments as to these purported claims are moot.

##### 2.  Eleventh Amendment Sovereign Immunity

Defendants argue that this Court lacks subject matter jurisdiction over this action with regard to claims against the Ohio EPA because the Ohio EPA has sovereign immunity pursuant to the Eleventh Amendment.[7]  (ECF No. 28, Mot. to Dismiss at PageID #747-48).  Plaintiffs' only claim against the Ohio EPA is a claim for injunctive relief.  (ECF No. 19, Am. Compl. at PageID

---

[7] "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.

#424-25). "Eleventh Amendment immunity 'bars all suits, whether for injunctive, declaratory, or monetary relief, against the state and its departments, by citizens of another state, foreigners, or its own citizens.'" *McCormick v. Miami University*, 693 F.3d 654, 661 (6th Cir. 2012); (quoting *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir.1993) (internal citations omitted)). Sovereign immunity applies to "state instrumentalities," *S.J. v. Hamilton County, Ohio*, 374 F.3d 416, 419 (6th Cir. 2004); (quoting *Regents of Univ. of Calif. v. Doe*, 519 U.S. 425, 429 (1997)). In other words, it applies "to those government entities that act as 'arm[s] of the state.'" *Id*.; (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. V. Doyle*, 429 U.S. 274, 280 (1977).

The Ohio EPA is a department of the state of Ohio. *See Gitler v. Ohio E.P.A.*, No. 2021WL6201289, *2 (6th Cir. 2021) (holding the Eleventh Amendment barred claims against the Ohio EPA); *Nihiser v. Ohio E.P.A.*, 269 F.3d 626, 627-629 (analyzing Eleventh Amendment immunity claims against the Ohio EPA). Eleventh Amendment immunity bars Plaintiffs' claim against it and Count Seven is dismissed as to the Ohio EPA.

## B. Claims Against Wilk

### 1. Subject Matter Jurisdiction

Wilk asserts that this Court lacks subject matter jurisdiction over Count Six because a takings claim cannot be asserted against Wilk in his individual capacity. (ECF No. 28, Mot. to Dismiss at PageID #754). Indeed, the Sixth Circuit has made clear that "a takings claims cannot be asserted against an individual defendant." *Boggs v. City of Cleveland*, No. 1:08-cv-02153, 2020WL 1640390, at *4 (N.D. Ohio April 2, 2020) (quoting *Jamison v. Angelo*, No. 4:10CV2843, 2012 WL 4434152, at *7 (N.D. Ohio Sept. 24, 2012)); *See also Vicory v. Walton*, 730 F.2d 466, 467 (6th Cir. 1984) ("Plaintiff may not maintain a constitutional cause of action against these defendants who neither have nor claim the eminent domain power, nor any power similar to it. The wrongful 'taking,' detention or theft by an individual of the property of another is not a

constitutional 'taking' as that term has been defined by the [F]ifth [A]mendment and commonly understood by the courts.") (citation omitted). Count Six is dismissed as to Wilk.

### 2. Statute of Limitations

Defendants argue that Counts One and Two are barred by the statute of limitations. (ECF No. 28, Mot. to Dismiss at PageID #752-53).

### a. The statute of limitations for Section 1983 and 1985(3) claims brought in Ohio is two years.

The statute of limitations for a claim for relief under §1983 is governed by the state statute of limitations for personal injury claims." *Bowden v. City of Franklin, Kentucky*, 13 Fed.Appx 266, 272 (6th Cir. 2001). Similarly, "[T]he statute of limitations for a claim for relief under §1985 is governed by "'the most analogous statute of limitations of the state in which the cause of action arose.'" *Bowden v. City of Franklin, Kentucky*, 13 Fed.Appx 266, 272 (6th Cir. 2001) (citing *Bedford v. University of Louisville School of Medicine,* No. 88–6423, 1989 WL 123143, at *2, 887 F.2d 1086 (6th Cir. Oct.19 1989). The Sixth Circuit has held that a two-year statute of limitations applies to §1983 claims in Ohio. *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007) (citing *Banks v. City of Whitehall,* 344 F.3d 550, 553 (6th Cir.2003); *Browning v. Pendleton,* 869 F.2d 989 (6th Cir.1989) (en banc)). Similarly "[a] two-year statute of limitations applies to §1985 claims brought in the state of Ohio." *Dotson v. Lane*, 360 Fed.Appx. 617, 620 n. 2 (6th Cir. 2010).

### b. The claims in Counts One and Two accrued on September 28, 2017.

"While statutes of limitations and tolling principles are governed by state law, the question of when a federal civil rights claim accrues remains one of federal law." *Bowden v. City of Franklin, Kentucky*, 13 Fed.Appx 266, 272 (6th Cir. 2001). "In general, a civil rights claim for relief accrues when the plaintiff knows or has reason to know of the injury that is the basis of his action." (citing *Friedman v. Estate of Presser,* 929 F.2d 1151, 1159 (6th Cir.1991); citing *Sevier*

*v. Turner,* 742 F.2d 262, 273 (6th Cir.1984)).  "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Sevier,* 742 F.2d at 273.

The following allegations are relevant to determining when Plaintiffs' claims accrued:

- Plaintiffs allege that beginning in 2004, and continuing today, Fairlawn, Roth, Randles, Wilk, Herhold and Rassavong conspired to deprive Smith of equal protection of the laws by conspiring to deprive him of his interest in the Property.  (ECF No. 19, Am. Compl. at PageID #417).
- Plaintiffs allege that "[i]n 2005, Wilk conspired with Fairlawn, Roth, and Randles to allow Herhold and Rassavong to trespass on Plaintiffs' parcel #09-03800."  (*Id*. at PageID #415).
- To support this allegation, Plaintiffs reference the October 24, 2005 letter from Wilk to Herhold stating "[y]our decision was to have the excessive fill properly removed off site.  I have visited the site numerous times providing direction during the project."  (*Id*.).
- Plaintiffs further allege that "Herhold and Rassavong conspired with Fairlawn, Roth, Randles, and Wilk to dump the fill dirt from their lot onto the property of [Plaintiffs]."  (*Id*.).  And, beginning in 2006, Fairlawn mowed Plaintiffs' property and assessed SLC for the cost.  (*Id*.).
- In support of this allegation, Plaintiffs reference the 2016 NOV issued by Wilk.  (*Id*.).
- Plaintiffs then allege that satellite photos, taken on April 9, 2005 and February 28, 2006, show that fill from the Herhold Parcel was improperly removed, dumped, and graded on Plaintiffs' parcel.  (*Id*. at PageID #403-405, 416).
- Plaintiffs allege that they obtained the satellite photos on September 28, 2017.  (*Id*. at PageID #404).

Plaintiffs argue that "the conspiracy has been ongoing since 2005" when Wilk oversaw the removal of fill from the Herhold Parcel.  (ECF No. 31, Opp. at PageID #868).  Plaintiffs further assert that the conspiracy continued through the Herhold Lawsuit Two trial through the use of allegedly false evidence.  (*Id*. at PageID #868-69).  Plaintiffs argue that they became aware of the allegedly false evidence after the State Trials on September 28, 2017.  (*Id.*).  Viewing these facts

as true, Plaintiffs awareness of the alleged falsity of evidence triggered their claims' accrual no later than September 28, 2017.

Plaintiffs contend that their claims were complete and their causes of action began to accrue on June 8, 2020, when they exhausted their appeals in Herhold Lawsuit Two.  (ECF No. 31, Opp. at PageID #869).  Plaintiffs' argument relies on *McDonough v. Smith*, 588 U.S. ---, 139 S.Ct. 2149, 2155 (2019) for the proposition that the statute of limitations on their claims began to run when they exhausted their appeals in State Trial 2.  (ECF No. 31, Opp. at PageID #869-70).  Plaintiffs are misguided.  In *McDonough*, the Supreme Court recognized that a particular claim may not realistically be brought while a violation is ongoing, such a claim may accrue at a later date. *McDonough v. Smith*, 139 S.Ct. at 2155.  The Supreme Court cited *Wallace v. Kato*, 549 U.S. 384, 389 (2007) for this proposition.

In *Wallace*, the petitioner was convicted of first-degree murder in state court and sentenced to 26 years in prison. *Wallace*, 549 U.S. at 386.  On appeal, the Appellate Court of Illinois held that the petitioner was arrested without probable cause and the case was remanded.  *Id*. at 386-87. On April 10, 2002, prosecutors dropped the charges against the petitioner; on April 2, 2003, the petitioner brought a §1983 claim against city police detectives, seeking damages for his  unlawful arrest.  *Id*. at 397.  The district court granted summary judgment to the city police and the Seventh Circuit affirmed, holding that the suit was time barred because the claim accrued at the time of arrest, not when the arrestee's conviction was later set aside.  *Id*.  The Supreme Court granted cert. *Id*.  The parties agreed that the statute of limitations was two-years pursuant to Illinois law; the Supreme Court was left to determine whether the statute of limitations began to run at the time of the arrest or on the date his conviction was vacated.  *Id*. at 387-88.

The dissenting judge in the Seventh Circuit argued that the claim accrued on the date his conviction was vacated, in reliance on the rule for deferred accrual in *Heck v. Humphrey*, 512 U.S. 477, 489 (1994) (holding "just as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor, so also a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated.")).  The Supreme Court's holding in Heck was based on "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments."  *Wallace*, 549 U.S. at 392; *Heck,* 512 U.S. at 486.

In *Wallace*, the Supreme Court clarified the rule for deferred accrual in *Heck* "is called into play only when there exists 'a conviction or sentence that has *not* been ... invalidated,' that is to say, an 'outstanding criminal judgment.' It delays what would otherwise be the accrual date of a tort action until the setting aside *of an extant conviction* which success in that tort action would impugn."  *Wallace*, 549 U.S. at 392-93.  Indeed, the rule in *Heck* would not apply to Plaintiffs' Section 1983 and 1985(3) claims for conspiracy and their pending appeals in Herhold Lawsuit Two.  Therefore, the Plaintiffs' claims accrued on September 28, 2017.

### c.  The statute of limitations for Counts One and Two expired on September 28, 2019.

Plaintiffs also argue that the conspiracy is ongoing, thereby tolling the statute of limitations period.  (ECF No. 31, Opp. at PageID #869-70).  As discussed *infra*, Plaintiff only provides conclusory allegations, insufficient to fully state their conspiracy claims.  Accordingly, the statute of limitations period was not tolled.  *See Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996) (holding that the statute of limitations was not tolled for a §1983 conspiracy claim brought in Ohio, where the plaintiff made conclusory allegations to support the claim.). Counts One and Two are barred by the statute of limitations and those claims are dismissed as to Wilk.

### 3. Immunity

Defendants argue that this Court lacks subject matter jurisdiction over this action with regard to claims against Wilk because he is entitled to both qualified immunity and absolute immunity. (ECF Nos. 28, Mot. to Dismiss at PageID #748-49; 34, Rep. in Supp. at PageID #921-22). As previously stated, the Court is dismissing Counts One, Two, and Six against Wilk on other grounds. However, for the sake of completeness, the Court will analyze Defendants' immunity arguments.

### a. Qualified Immunity

Although Defendants assert this argument in a Rule 12(b)(1) motion, it should have been asserted under Rule 12(b)(6). *See Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir. 2016) ("Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the defendant is entitled to a meritorious affirmative defense such as qualified immunity.")). Generally, the defense of qualified immunity is rejected when asserted in a Rule 12(b)(6) motion. *Wesley v. Campbell*, 779 F.3d 421, 433 ("[I]t is generally inappropriate for a district court to grant a 12(b)(6) motion on the basis of qualified immunity.").

However, quality immunity can be asserted in a motion to dismiss and district courts "cannot 'avoid ruling on the issue.'" (*Sterling Hotels, LLC v. McKay*, 71 F.4th 463, 466 (6th Cir. 2023). The Supreme Court has "repeatedly…stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) ("[W]e have made clear that the 'driving force' behind creation of the qualified immunity doctrine was a desire to ensure that ' "insubstantial claims" against government officials [will] be resolved prior to discovery. ") (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 n. 2, (1987)). At the pleadings stage, the complaint's factual allegations are taken as true and the court decides

whether – based on those facts – the defendant is entitled to qualified immunity. *Sterling*, 71 F.4th at 467; citing *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016

### i. Entitlement to Qualified Immunity

Government officials are entitled to qualified immunity so long as their actions do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Mitchell v. Forsyth*, 472 U.S. 511, 524 (1985) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982) ("Where an official could be expected to know that his conduct would violate statutory or constitutional rights, he *should* be made to hesitate....") (emphasis added). Qualified immunity shields government officials from liability for claims brought under Section 1983. *Peatross*, 818 F.3d at 240.

### ii. Qualified Immunity does not shield government officials from claims for injunctive relief.

Count Seven of the Amended Complaint is a request for injunctive relief, asking the Court to permanently enjoin the enforcement of the NOV issued by Wilk. (ECF No. 19, Am. Compl. at PageID #422-23). Plaintiffs' prayer for relief includes 1) a request that the Court issue a declaratory judgment that the NOV is null and void and 2) a request that the Court enjoin the Ohio EPA, Wilk, and Fairlawn from enforcing or penalizing Plaintiffs based on the NOV. (*Id*. at PageID #426). Qualified immunity protects government officials from individual liability for money damages, but not from declaratory or injunctive relief. *Flagner v. Wilkinson*, 241 F.3d 475, 483 (6th Cir. 2001); *Pearson*, 555 U.S. at 242–43 (2009) (observing that qualified immunity does not preclude injunctive relief for a claim under 42 U.S.C. § 1983); *see also Wood v. Strickland*, 420 U.S. 308, 315 n.6 ("[I]mmunity from damages does not ordinarily bar equitable relief."). But for the fact that the aforementioned claims against Wilk are time barred, qualified immunity would not have been a defense to any claim against Wilk for declaratory and injunctive relief sought.

### iii.    Qualified Immunity bars Section 1983 Claims for money damages.

Count Nine of the Amended Complaint is a request for exemplary punitive damages against all Defendants.  (ECF No. 19, Am. Compl. at PageID #425-26).  Plaintiffs allege 1) all Defendants' actions "were malicious, willful, and wanton," 2) the actions were "made with specific intent to harm Plaintiffs," and 3) the actions constitute a "conspiracy to…commit trespass and the physical taking of parcels #09-03800 and #09-03799)".  (*Id*. at PageID #426).  Plaintiff requests exemplary damages to deter the alleged conduct in the future.  (*Id*.).  Plaintiffs' prayer for relief includes 1) finding all Defendants jointly liable for damage in an amount to be proven at trial, 2) a request for the Court to issue a judgment for compensatory damages in an amount to be proven at trial, and 3) a request for litigation fees and punitive damages in an amount to be decided by a jury.  (*Id*.).  To the extent that Plaintiffs could bring any of these requests for money damages against Wilk for their Section 1983 claims, the Court finds that qualified immunity applies.

In the Sixth Circuit, there is a two-step inquiry to determine whether a government official is entitled to qualified immunity.  *Peatross*, 818 F.3d at 240.  "First, viewing the facts in the light most favorable to the plaintiff, 'do the facts alleged show that the officer's conduct violated a constitutional right?'"  *Id*.; citing *Silberstein v. City of Dayton,* 440 F.3d 306, 311 (6th Cir.2006).  "Second, was 'the right clearly established' at the time of the violation?"  *Id*.; *see also Philips v. Roane County, Tenn.*, 534 F.3d 531 538–39 (6th Cir.2008).  The plaintiff "bear[s] the burden of showing that a clearly established right has been violated and that the official's conduct caused that violation,"  *Id*.; citing *Essex v. Cty. of Livingston,* 518 Fed.Appx. 351, 357 (6th Cir. 2013).

**The facts alleged do not show that Wilk's conduct violated Plaintiffs' constitutional rights**.

A §1983 individual-capacity claim seeks to hold an official personally liable, as opposed to an official-capacity claim which is essentially a claim against a municipality.  *Peatross*, 818

18

F.3d at 241.  "[T]o establish *personal* liability in a Section 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right[.]"  *Id*.; (quoting *Leach v. Shelby Cty. Sheriff,* 891 F.2d 1241, 1245 (6th Cir.1989) (internal quotation marks omitted) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)).

Plaintiff alleges that Wilk issued the NOV to Plaintiffs for unauthorized fill of isolated wetlands on February 24, 2016.  (ECF No. 19, Am. Compl. at PageID #422).  Plaintiffs further assert that the NOV, purporting to enforce the USACE permit, was unlawful.  (*Id*., at PageID #423).  Plaintiffs contend the USACE permit expired on February 4, 2004, upon the issuance of the USACE-Fairlawn Letter to the Ohio EPA stating that the USACE permit was not required for impact to isolated wetlands.  (*Id*.).  Plaintiffs claim the issuance of the NOV denied them use of their property, constituting a taking in violation of the Fifth Amendment. (*Id*.). They also aver that Wilk's conduct was part of a conspiracy to deprive them of their interest in the Property in violation of §1983.  (*Id*. at PageID #414).  They contend that he engaged in a conspiracy to deprive Plaintiffs equal protection of the law in violation of Section 1985(3).  (*Id*. at PageID #417).

Plaintiffs have put forth no facts showing how issuing the NOV accomplished or amounted to a deprivation of Plaintiffs' constitutional rights.  Plaintiffs' allegations are conclusory.  As discussed *infra*, there are no facts alleged to support the §1983 conspiracy claims nor are there facts alleged that show how issuing the NOV is a taking under the Fifth Amendment. This element is not satisfied.

**<u>The Constitutional right alleged is not clearly established.</u>**

"[T]here has been no court in this circuit that ha[s] yet decided whether an officer could be liable for a taking in his individual capacity."  *Sterling Hotels, LLC v. McKay*, 71 F.4th 463, 468

(6th Cir. 2023); *See Vicory v. Walton*, 730 F.2d 466, 467 (6th Cir. 1984) ("Plaintiff cites no case, and we can find none, that suggests that an individual may commit and be liable in damages for a 'taking' under the Fifth Amendment"). Therefore, Wilk's alleged individual liability for a taking claim is not clearly established. *See Sterling Hotels*, 71 F.4th at 468 (A state elevator inspector sealed the plaintiff's elevators and the plaintiff alleged that the inspector deprived him of the use of his property in violation of the Fourteenth and Fifth Amendments. The Sixth Circuit held the state inspector was entitled to qualified immunity on the Fifth Amendment taking claim brought against him in his individual capacity, because the constitutional right alleged was not clearly established when the alleged taking occurred.). Accordingly, while the Court has determined that the counts against Wilk are time-barred, he otherwise would be entitled to qualified immunity as to any request for money damages.

### b.  Absolute Immunity

Defendants also argue that Wilk is entitled to absolute immunity from suit based on any testimony given in the previous state court action. (ECF No. 34, Rep. in Supp. at PageID #921). Indeed, the Supreme Court has held that "a trial witness has absolute immunity with respect to any claim based on the witness' testimony." *Rehberg v. Paulk*, 566 U.S. 356, 367 (2012); (citing *Briscoe v. LaHue*, 460 U.S. 325, 332-33 (1983)).

All of Plaintiff's claims against Wilk appear to be based in large part on is his allegedly false testimony in Herhold Lawsuit Two: 1) about his job duties in 2005; 2) that Herhold and Rassavong needed to resolve the fill issue with the Ohio EPA in order to meet Fairlawn's conditions to obtain a building permit; 3) that the fill was properly removed from the Herhold Parcel; 4) that he oversaw the proper removal of the fill; and 5) to the necessity of removing the fill. (ECF No. 31, Opp. at PageID #861-68). Wilk is therefore entitled to absolute immunity from all of Plaintiffs' claims.

20

### 4.  Failure to State a Claim

Defendants argue that Counts One, Two, and Three fail to state a claim for relief because Plaintiffs fail to allege facts to show that the Wilk engaged in conduct that could have deprived Plaintiffs of their federally protected rights.  (ECF No. 28, Mot. to Dismiss at PageID #750-52). Although the Court has dismissed Counts One, Two, and Six against Wilk on other grounds, it will conduct the 12(b)(6) analysis.

### a.  Count One – Section 1983 Conspiracy

A §1983 civil conspiracy claim requires a plaintiff to show "(1) a 'single plan' existed, (2) [defendants] 'shared in the general conspiratorial objective' to deprive [plaintiffs] of [their] constitutional ... rights, and (3) 'an overt act was committed in furtherance of the conspiracy *768 that caused injury' to [plaintiffs]."  *Siefert v. Hamilton County*, 951 F.3d 753, 767 (6th Cir. 2020) (quoting *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011)).  Plaintiffs claim fails because there are no facts alleged by Plaintiffs that any such agreement existed.  Plaintiffs allegations are conclusory, only stating that the Defendants conspired to deprive them of their property rights.  (ECF No. 19, Am. Compl. at PageID #414-20).  Although Plaintiffs include the working relationships between the Defendants, they do not allege that the Defendants agreed to violate Plaintiffs' constitutional rights.

Without specific allegations that the Defendants entered into an agreement to deprive Plaintiffs of their rights, Count One fails to state a claim for relief.  *Siefert*, 951 F.3d at 768 ("It is well-settled that conspiracy claims must be pled with some degree of specificity.") (quoting *Heyne v. Metropolitan Nashville Schools*, 655 F.3d 556, 563 (6th Cir. 2011) (editing mark omitted.)). Plaintiffs have not alleged any facts, with particularity, showing that Wilk entered into a plan or conspiratorial objective to deprive Plaintiffs of their constitutional rights.  *Heyne*, 655 F.3d at 564. Count One fails to state a claim as to Wilk.

**b.  Count Two – Section 1985(3) Conspiracy**

A §1985(3) civil conspiracy claim requires a plaintiff to show "1) a conspiracy involving two or more persons; 2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and 3) an act in furtherance of the conspiracy; 4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States." *Smith v. Thornburg,* 136 F.3d 1070, 1078 (6th Cir.1998) (citing *Johnson v. Hills & Dales Gen. Hosp.,* 40 F.3d 837, 839 (6th Cir.1994), *cert denied*).  The plaintiff must demonstrate that the conspiracy was motivated by a class-based animus, such as race.  *Johnson*, 40 F.3d at 839; *see also Collyer*, 98 F.3d at 233.

Plaintiffs argue that they have properly asserted a 1985(3) claim as a "class of one."  (ECF No. 31, Opp. at PageID #866).   Equal Protection standards require a showing of both a discriminatory purpose and discriminatory effect.  *Royal oak Entertainment, LLC v. City of Royal Oak, Michigan*, 205 Fed.Appx. 389, 398 (6th Cir. 2006).  Because Plaintiffs claim they are a "class of one," they must show they have been been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Id*., (quoting *Village of Willowbrook v. Olech,* 528 U.S. 562, 564, (2000)).   Plaintiffs' arguments are conclusory; they fail to allege supporting facts that if taken as true, state a claim for relief.  (ECF No. 31, Opp. at PageID #866-67).

Plaintiffs state that there is no rational basis for Wilk to allow and oversee the alleged dumping of fill on their property, nor is there a rational basis for Fairlawn, Roth, and Randles to allow Herhold and Rassavong to dump the fill under Wilk's direction.  (*Id*. at PageID #867).  However, Plaintiffs do not demonstrate that they were treated differently than others in this regard.  There are no allegations that Wilk prevented other property owners in the development from

dumping fill from their property onto another property in the development, or that he oversaw the dumping of fill onto a proper dumping site for other property owners in the development.

Plaintiffs claim that property owners on their street, and in their development, have been allowed to fill wetlands on their properties without obtaining a permit from the USACE or Ohio EPA.  (ECF No. 19, Am. Compl. at PageID #417).  They argue that other properties on the street have been allowed to fill previously delineated Army Corps wetlands after the Ohio EPA enacted its own permit regulations.  (*Id*.).  This allegation, if taken as true, also fails.  First, The NOV issued to Plaintiffs states that Plaintiffs "have the option of applying for an After-The-Fact (ATF) Permit, or to restore the wetland to the approximate original conditions."  (ECF No. 19-8, NOV at PageID #437).  Plaintiffs were given the opportunity to apply for the ATF permit, which would have allowed them to leave their wetlands filled.  Plaintiffs allege no facts indicating that they applied, and they were denied. Second, Wilk is alleged to have unlawfully issued the NOV. (ECF No. 19, Am. Compl. at PageID #411).  Plaintiffs have not alleged facts that Wilk declined to issue NOVs to others similarly situated.

### C. Supplemental Jurisdiction

Count Three is an Ohio law conspiracy claim against Fairlawn, Roth, Randles, Wilk, Herhold, and Rassavong.  Plaintiffs allege that they conspired to obtain a civil judgment against Plaintiffs in Herhold Lawsuit Two based on fabrication of a need to properly remove overfill from the Herhold Parcel.  (*Id*. at PageID #418-20).  Plaintiffs bring this claim pursuant to 28 U.S.C. § 1367, alleging this Court has supplemental jurisdiction over the state conspiracy claim.  (*Id*.).

District courts have "supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).  "The district courts may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction."

*Id*.  "If the federal claims are dismissed before trial, the state claims generally should be dismissed as well."  *Wojnicz v. Davis*, 80 Fed.Appx. 382, 384–85 (6th Cir. 2003) (citing *Taylor v. First of Am. Bank-Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992)).  Because this Court dismisses all federal claims against Wilk, this Court declines to exercise supplemental jurisdiction over Count Three.  Count Three is dismissed as to Wilk.

### IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants Ohio Environmental Protection Agency and Ed Wilk's Motion to Dismiss (ECF No. 28).

**IT IS SO ORDERED.**

Dated: September 21, 2023

CHARLES E. FLEMING
U.S. District Court Judge