UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| SMITH LAND COMPANY, INC., et al., | ) | CASE NO. 5:21-cv-01848 |
| | ) | |
| Plaintiffs, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM  ORDER  AND** |
| THE CITY OF FAIRLAWN, OHIO, et al., | ) | **OPINION** |
| | ) | |
| Defendant. | ) | |

Before the Court is Defendant City of Fairlawn ("Fairlawn"), Defendant Mayor William J. Roth ("Roth"), and Defendant Christopher Randles ("Randles") (collectively "Defendants") Motion to Dismiss (ECF No. 25) Plaintiffs' Smith Land Company ("SLC") and Robert G. Smith's ("Smith") (collectively "Plaintiffs") Amended Complaint (ECF No. 19).  For the reasons discussed below, the Motion is **GRANTED**.

## I.    BACKGROUND

### A. Factual Background

The allegations in this action  arise from the subdivision, sale, designation as wetlands of, and fill material placement on real property owned by Plaintiffs.  (ECF No. 19, PageID #389). Plaintiffs' allegations are as follows:

### 1.  Purchase and Subdivision of the Property

SLC purchased and sought to subdivide 9.7 acres of real property on Brunsdorph Drive in Fairlawn, Ohio (the "Property") in 1999.  (*Id.* at PageID# 390-91).  To do so, SLC applied to Defendant City of Fairlawn ("Fairlawn") to subdivide the property into ten single-family residential lots and Block A.  (*Id.* at PageID# 391).  Fairlawn determined the Property contained isolated wetlands, subject to the jurisdiction of the United States under the Clean Water Act (the

"CWA").  (*Id*.).  To subdivide the Property, Fairlawn required a 404 Permit from the U.S. Army

Corps of Engineers (the "USACE") to fill or impact the isolated wetlands.  (*Id*.).  On April 14,

2000, SLC obtained a 404 Permit from the USACE and a 401 Permit from Defendant Ohio

Environmental Protection Agency ("Ohio EPA"), both of which were valid until February 11,

2002.  (*Id*.).

When SLC sought to further subdivide Block A into three single-family residential parcels,

it provided a copy of the 404 Permit to Fairlawn.  (*Id*.).  Fairlawn approved the subdivision of

Block A on April 18, 2000 and SLC filed deeds approved by Fairlawn subdividing Block A into

three parcels on May 19, 2000.  (*Id*.).  Fairlawn required SLC to pay three additional sewer tap

fees for the three additional single-family residential parcels.  (*Id*.).

### 2.  Supreme Court Decision

On January 9, 2001, the Supreme Court decided *Solid Waste Agency of Northern Cook Cty.*

*v. Army Corps of Engineers*, 531 U.S. 159 (2001).  (*Id*.).  The Supreme Court held that the

migratory bird rule, which purported to extend jurisdiction of isolated wetlands on the Property to

the USACE, exceeded the authority granted under the CWA.  (*Id*.).  Thus, the isolated wetlands

on the Property were no longer within the jurisdiction of the USACE.  (*Id*. at PageID# 392).

### 3.  Fairlawn Fills Block A

In February 2001, a road contractor for Fairlawn dumped fill on two parcels in Block A.

(*Id*. at PageID# 391-92).  Smith complained to Fairlawn that the dumping was unauthorized, and

Fairlawn sent the contractor to grade the dumped fill.  (*Id*. at PageID# 392).  Plaintiffs allege they

were never given the opportunity to challenge Fairlawn's dumping of fill.  (*Id*. at PageID# 400).

On July 17, 2001, Ohio enacted a permanent permitting process for impacting isolated wetlands,

O.R.C. § 611.02-029.  (*Id*.).

### 4.  Sale of Property

Defendants Shawn A. Herhold ("Herhold") and Malavanh D. Rassavong ("Rassavong") contracted to purchase a Block A parcel (the "Herhold Parcel") on July 11, 2002.  (*Id*.).  The contract included a disclosure noting the Herhold Parcel had been designated as a wetland.  (*Id*.).  On March 26, 2003, Timothy and Dawn Kensinger (collectively the "Kensingers") contracted to purchase a Block A parcel (the "Kensinger Parcel").  (*Id*. at PageID# 393).  The contract did not include a disclosure noting that the Kensinger Parcel had been designated as a wetland.  (*Id*. at PageID# 394).

In November 2003, William J. Roth ("Roth"), Mayor of Fairlawn, wrote the USACE enquiring as to whether future owners of the Block A parcels would have to acquire USACE authorization to impact wetlands on the parcels.  (*Id*. at PageID# 393).  The USACE responded on February 4, 2004, stating that a USACE permit was not required for impacts to wetlands on Block A and advising to contact the Ohio EPA to determine the state permit requirements.[1]  (*Id*.).  On February 9, 2004, the Ohio EPA informed Fairlawn that owners of the Block A parcels will need to apply for and receive an Isolated Wetland Permit ("IWP") before impacting isolated wetlands.[2] (*Id*. at PageID# 393-34).

### 5.  The Kensinger Lawsuit

The Kensingers applied to Fairlawn for a building permit and Fairlawn denied the application, requiring the fill previously deposited by Fairlawn's contactor to be removed.  (*Id*. at PageID# 394).  The Kensingers sued Plaintiffs for breach of contract, stating that they were not aware that the Kensinger Parcel was a designated wetland that required a USACE permit in order to obtain a building permit from Fairlawn.  (*Id*.).  Plaintiffs settled with the Kensingers and bought

---

[1] ECF No. 19-2, PageID# 430-31.
[2] ECF No. 19-3, PageID# 432.

the Kensinger Parcel back upon learning that its realtor did not provide the Kensingers with the wetland disclosure.  (*Id.*).

### 6. Herhold Lawsuit One

On May 9, 2008, Herhold and Rassavong also sued the Plaintiffs for breach of contract and fraud in state court.  (*Id.* at PageID #395).  The Plaintiffs refused to buy the Herhold Parcel back because Herhold and Rassavong were provided with a wetland disclosure, a USACE permit was issued for the fill Fairlawn's contractor dumped on the parcel, and Fairlawn authorized the dumping.  (*Id.*).  The Plaintiffs moved to dismiss and were denied, and in 2014, the case went to a jury trial and judgment was for Herhold and Rassavong.  (*Id.*).  Thereafter, the judge recused, and a new trial was ordered.  (*Id.*).

### 7. Ohio EPA Public Records

After Herhold Lawsuit One, on May 4, 2015, Smith made a public records request to  Ohio EPA for all records of its employee, Defendant Ed Wilk ("Wilk").  (*Id.* at PageID# 398).  Included in the records were Wilk's calendar, notes, and letters.  (*Id.* at PageID# 399).

### a. The Wilk-Randles Letter

Wilk met with Herhold and Rassavong at the Herhold Parcel on May 27, 2005.  (*Id.*).  On May 31, 2005, Wilk wrote a letter ("Wilk-Randles Letter") to Chris Randles ("Randles"), an employee of the Fairlawn Building and Zoning Department.[3] (*Id.*).  The Wilk-Randles Letter stated that after walking the Herhold Parcel, Wilk determined that the fill was mostly on the neighboring property to the north of the Herhold Parcel and some fill activity occurred on the north boundary of the Herhold Parcel.  (*Id.*).  Wilk also stated the amount of over-fill on the Herhold Parcel is minimal compared to the adjacent property and removal of the over-fill is not required as long as the area is used as a buffer zone between the fill permitted on the Herhold Parcel and the wetlands

---

[3] ECF No. 19-4, PageID433.

that should not have been filled. (*Id*.).  Plaintiffs allege the Wilk-Randles Letter was sent to Herhold.  (*Id*.).

### b.  The Wilk-Herhold Letter

On October 24, 2005, Wilk wrote a letter to Herhold ("Wilk-Herhold Letter").[4]  (*Id*. at PageID# 400).  The Wilk-Herhold Letter stated that the fill previously dumped on the Herhold Parcel failed to comply with the USACE limits.  (*Id*.).  It further stated that SLC overfilled the wetlands at the north property boundary and, since then, the wetlands have been determined to be regulated by the Ohio EPA.  (*Id*.).  Wilk further stated "your decision was to have the excessive fill properly removed off site.  I have visited the site numerous times providing direction during the project." (*Id*.).  He also said that he visited the Herhold Parcel on the date of the letter to inspect the work and the excess fill was removed, but it must also meet the conditions and approval of the Fairlawn Building and Zoning Department.  (*Id*.).

Plaintiffs allege they were never notified of a claim of overfill on the Herhold Parcel, any violation of the USACE permit and/or the Ohio EPA regulation, or any enforcement action being taken due to the overfill.  (*Id*. at PageID# 400, 403).  They allege they first learned of the overfill when they were served with a copy of the complaint for Herhold Lawsuit One.  (*Id*. at PageID# 403).

### c.  The Wilk-White Tail Letter

On March 28, 2007, Wilk wrote  a letter to a property owner on White Tail Ridge Road in Fairlawn regarding the property owner's concern about the wetlands behind the homes on White Tail Ridge Road that border the homes on Brunsdorph Road ("Wilk-White Tail Letter").[5]  (*Id*. at PageID# 409).  In the Wilk-White Tail Letter, Wilk stated he visited the area on March 21, 2007

---

[4] ECF No. 19-5, PageID# 434.
[5] ECF No. 19-7, Wilk-White Tail Letter at PageID #436.

and verified the conditions of the wetlands. (*Id.*).  He also stated that the USACE issued a permit allowing the fill of wetlands along the properties on Bunsdorph Road and any additional impacts to wetlands will require a 401 permit from the Ohio EPA. (*Id.*).

### d.  Notice of Violation

On February 24, 2016, Wilk issued a Notice of Violation ("NOV") against Plaintiffs for unauthorized fill on both of the Block A parcels they owned.[6] (*Id.*).  Plaintiffs allege that Wilk issued the NOV in retaliation for Plaintiffs' public records request. (*Id.*).  Plaintiffs allege the NOV was mailed to Smith at an old address, where he no longer resided, and he did not receive it. (*Id.*).  Plaintiffs allege that Wilk issued the NOV to deliberately and unlawfully encumber Plaintiffs' parcels so that they could not be used for a single-family residence and prevent Plaintiffs from marketing and selling their parcels. (*Id.* at PageID# 411).

### 8.  Herhold Lawsuit Two

The second trial was in July 2017.  (*Id.*).  Wilk was designated as the Ohio EPA's representative.  (*Id.*).  Wilk testified that he is an Ohio EPA 401 Coordinator and his job duties include reviewing 401 permit applications, conducting pre-application meetings, reviewing complaints of unauthorized fill, and enforcement. (*Id.* at PageID# 398).  Wilk also testified to the measurements of the overfill and that mitigation was available in 2005 for $35,000 per acre, approximately $442 for the Herhold Parcel. (*Id.* at PageID# 403).  Plaintiffs allege they were not notified of Wilk's involvement with the Herhold Parcel. (*Id.*).  Wilk also testified that the USACE would handle any violations on the Herhold Parcel until 2004. (*Id.* at PageID# 410).

---

[6] ECF No. 19-8, NOV at PageID #437.

On September 19, 2017, the court issued a final order of judgment for Herhold and Rassavong. (*Id*.). Plaintiffs filed a motion for judgment notwithstanding the verdict and new trial that was denied on November 30, 2017. (*Id*.). The Ohio Ninth District Court of Appeals affirmed the judgment on June 19, 2019. (*Id*.). The Ohio Supreme Court declined jurisdiction on October 15, 2019, and the U.S. Supreme Court denied certiorari on June 8, 2020. (*Id*.).

### 9. Post-Lawsuit

After the second Herhold trial, on September 28, 2017, Plaintiffs allege that they received two Google Earth Pro photos (the "Block A Photos"), dated April 9, 2005 and February 28, 2006, respectively. (*Id*. at PageID# 404). Plaintiffs allege the Block A Photos show what Block A looked like before Herhold and Rassavong removed the overfill from the Herhold Parcel and after. (*Id*. at PageID# 404-05). Plaintiffs assert the Block A Photos show that dirt from the Herhold Parcel was improperly removed and dumped on SLC's parcel. (*Id*. at PageID# 405). Plaintiffs contend that Wilk oversaw the improper removal of dirt from the Herhold Parcel and dumping on SLC's parcel. (*Id*.). Plaintiffs claim the Block A Photos also show that homes built to the south of the Herhold Parcel have filled in wetlands. (*Id*.). Plaintiffs aver that the Block A Photos support their claim that Fairlawn, Roth, Randles, Wilk, Herhold, and Rassavong engaged in conduct that constitute or contributed to trespass on their parcel. (*Id*. at PageID# 406).

Plaintiffs allege that beginning in 2006, Fairlawn began mowing the grass on SLC's parcel, and has since assessed hundreds of dollars in special assessment taxes a year on SLC's parcel in addition to sewer tap fees Plaintiffs paid Fairlawn. (ECF No. 19, PageID# 411-12). Plaintiffs claim that they never received a bill for mowing or taxes owed on the SLC parcel. (*Id*. at PageID# 412). On February 10, 2021, Fairlawn filed tax foreclosure action on the SLC parcel for the Summit County Land Reutilization Corporation ("SCLRC") to acquire it. (*Id*.). The SCLRC determined the land was nonproductive and the acquisition of the land was necessary for the

7

implementation of an effective land reutilization program.  (*Id*.).  Plaintiffs aver that Fairlawn's refusal to allow the land to be "productive" is the sole reason for the tax delinquency.  (*Id*. at PageID# 413).

### 10. Claims Against Fairlawn, Roth, and Randles

Count One of the Amended Complaint is brought under 42 U.S.C. § 1983, and alleges that Fairlawn, Roth, Randles, Wilk, Herhold, and Rassavong conspired to deprive Plaintiffs of their interest in the Property.  (ECF No. 19, PageID# 414-16).

Count Two of the Amended Complaint is brought under 42 U.S.C. § 1985(3), and alleges that Fairlawn, Roth, Randles, Wilk, Herhold, Rassavong, and Skidmore conspired to deprive Plaintiffs of equal protection of the law by conspiring to deprive them of their interest in the Property.  (*Id*. at PageID# 417-18).

Count Three of the Amended Complaint is brought under 28 U.S.C. § 1367 for civil conspiracy under Ohio law.  (*Id*. at PageID# 418).  Plaintiff alleges that Fairlawn, Roth, Randles, Wilk, Herhold, and Rassavong conspired to obtain a civil judgment against Plaintiffs in Herhold Lawsuit Two, based on fabrication of a need to properly remove overfill from the Herhold Parcel. Plaintiffs allege a conspiracy to commit fraud, trespass, and take property, including a judgment against Plaintiffs for $284,889.29 plus interest.  (*Id*. at PageID# 418-20).

Count Four of the Amended Complaint is brought under Section 1983 and 28 U.S.C. § 1331, alleging that Fairlawn deprived Plaintiffs of their private property, in violation of the Fifth Amendment Takings Clause because it denied Plaintiffs' building permit subject to wetland restrictions on their parcels.  (*Id*. at PageID# 420-21).

Count Five of the Amended Complaint is brought under Section 1983 and 28 U.S.C. § 1331, alleging that Fairlawn deprived Plaintiffs of their private property, in violation of the Fifth

8

Amendment Takings Clause because it required Smith to pay sewer tap fees. (*Id*. at PageID# 421-22).

Count Seven of the Amended Complaint is a request for permanent prospective injunction against the Ohio EPA, Wilk, and Fairlawn, requesting this Court to permanently enjoin them from enforcing or penalizing them based on the NOV. (*Id*. at PageID# 424-25).

Count Nine of the Amended Complaint is a request for exemplary punitive damages against Fairlawn, Roth, Randles, Wilk, Herhold, and Rassavong for their alleged conduct constituting "conspiracy to commit fraud, trespass, and taking of [their parcels]," and denying Plaintiffs "of equal protection of the law to commit trespass and the physical taking of [their parcels]." (*Id*. at PageID# 425-26).

Plaintiffs bring all claims against Roth individually and in his official capacity. (ECF No. 19, PageID# 390). They bring all claims against Randles in his individual capacity only. (*Id*.).

## B. Procedural Background

Plaintiffs filed this action on September 28, 2021. (ECF No. 1). Plaintiffs subsequently filed an Amended Complaint on December 27, 2021. (ECF No. 19). Defendants filed their Motion to Dismiss the Amended Complaint (ECF No. 25) on January 14, 2022. Plaintiffs filed their Opposition (ECF No. 29) on February 14, 2022. Defendants filed their Reply in Support of the Motion (ECF No. 32) on February 25, 2022.

## II.    LEGAL STANDARD

## A. Federal Rule of Procedure 12(b)(6)

A party may move to dismiss a claim against it when the claimant has "failed to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A 12(b)(6) motion to dismiss tests the complaint's legal sufficiency. *Riddle v. Egensperger*, 266 F.3d 542, 550 (6th Cir. 2001). A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility

in the Complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007).  A pleading must contain

a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 677-78 (2009).  The factual allegations in the pleading must be sufficient to

raise the right to relief above the speculative level on the assumption that all the allegations in the

Complaint are true.  *Bell Atl. Corp.*, 550 U.S. at 555.  The Plaintiff is not required to include

detailed factual allegations, but must provide more than "an unadorned, the-Defendant-unlawfully-

harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A pleading that offers legal conclusions or a

simple recitation of the elements of a cause of action will not meet this pleading standard.  *Id*.  In

reviewing a Complaint, the Court must construe the pleading in the light most favorable to the

Plaintiff.  *Bibbo v. Dean Witter Reynolds, Inc*., 151 F.3d 559, 561 (6th Cir.1998).

## B.  Federal Rule of Procedure 12(c)

"After the pleadings are closed–but early enough not to delay trial–a party may move for

judgment on the pleadings."  Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings

essentially constitutes a delayed motion under Rule 12(b)(6) and is evaluated under the same

standard. *See, e.g.*, *Holland v. FCA US LLC*, 656 F. App'x 232, 236 (6th Cir. 2016).  Judgment on

the pleadings is appropriate where, construing the material allegations of the pleadings and all

reasonable inferences in the light most favorable to the non-moving party, the Court concludes

that the moving party is entitled to judgment as a matter of law.  *Anders v. Cuevas*, 984 F.3d 1166,

1174 (6th Cir. 2021).  In construing the pleadings, the Court accepts the factual allegations of the

non-movant as true, but not unwarranted inferences or legal conclusions. *Holland*, 656 F. App'x at

236–37 (citing *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)).  On a motion under

Rule 12(c), courts "must follow the Supreme Court's changes to the pleading standards in *Ashcroft*

*v. Iqbal*, 556 U.S. 662 [129 S.Ct. 1937, 173 L.Ed.2d 868] (2009), and *Bell Atl. Corp. v. Twombly*,

550 U.S. 544 [127 S.Ct. 1955, 167 L.Ed.2d 929] (2007)."  *Bates v. Green Farms Condo. Assoc.*,

958 F.3d 470, 480 (6th Cir. 2020) (citing *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017)). Only "well-pleaded factual allegations" that "plausibly give rise to an entitlement of relief" and "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" will survive.  *Id.* (quotation and citation omitted).  Conversely, "[m]ere labels and conclusions are not enough[.]" *Engler*, 862 F.3d at 575. Nor are facts that are "merely consistent with" liability. *Bates*, 958 F.3d at 480 (quotation omitted).

## III.  LAW AND ANALYSIS

### A. Immunity

Defendants argue that Roth and Randles are entitled to qualified immunity for all federal claims alleged in the Amended Complaint.  (ECF No. 25, PageID# 461).

### 1.  Roth and Randles are entitled to qualified Immunity.

"Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the defendant is entitled to a meritorious affirmative defense such as qualified immunity."  *See Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir. 2016). Generally, the defense of qualified immunity is rejected when asserted in a Rule 12(b)(6) motion. *Wesley v. Campbell*, 779 F.3d 421, 433 ("[I]t is generally inappropriate for a district court to grant a 12(b)(6) motion on the basis of qualified immunity.").

However, qualified immunity can be asserted in a motion to dismiss and district courts "cannot 'avoid ruling on the issue.'" (*Sterling Hotels, LLC v. McKay*, 71 F.4th 463, 466 (6th Cir. 2023). The Supreme Court has "repeatedly…stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) ("[W]e have made clear that the 'driving force' behind creation of the qualified immunity doctrine was a desire to ensure that ' "insubstantial claims" against government officials [will] be

resolved prior to discovery. ") (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 n. 2, (1987)).

At the pleadings stage, the complaint's factual allegations are taken as true and the court decides

whether – based on those facts – the defendant is entitled to qualified immunity. *Sterling*, 71 F.4th

at 467; citing *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

### a.  Entitlement to Qualified Immunity

Under the doctrine of qualified immunity, "government officials performing discretionary

functions generally are shielded from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would

have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

A government official defendant in a section 1983 suit is entitled to qualified immunity if their

conduct "does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known" *Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004)

(*quoting Bell v. Johnson*, 308 F.3d 594, 601 (6th Cir. 2002).  For a right to be clearly established,

"[t]he contours of the right must be sufficiently clear that a reasonable official would understand

that what he is doing violates that right." *Bell*, 308 F.3d at 601 (quoting *Russo v. City of Cincinnati,*

953 F.2d 1036, 1042 (6th Cir.1992) (quoting *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct.

3034, 97 L.Ed.2d 523 (1987)).

The federal claims against Roth and Randles, in their individual capacities, are the Section

1983 and 1985(3) conspiracy claims.  (ECF No. 19, PageID# 414-18).  The facts as alleged in the

Amended Complaint fail to show that Roth and Randles engaged in conduct that gives rise to

Section 1983 and 1985(3) conspiracy claims.  Indeed, Defendants correctly point out that there are

no allegations that Roth ever had any communication with Wilk, Herhold, or Rassavong at all, let

alone conspired with them to deprive Plaintiffs of their constitutional rights.  (ECF No. 25,

12

PageID# 476).  Similarly, other than alleging Randles met with Wilk, Herhold and Rassavong in 2005, there are no facts alleged that show Randles ever entered into an agreement with them to violate Plaintiffs' constitutional rights.  (*Id.*).  Accordingly, Counts One and Two are dismissed as to Roth and Randles.

### B.  Conspiracy Claims

#### 1.  Conspiracy under Sections 1983

A Section 1983 civil conspiracy claim requires a plaintiff to show "(1) a 'single plan' existed, (2) [defendants] 'shared in the general conspiratorial objective' to deprive [plaintiffs] of [their] constitutional ... rights, and (3) 'an overt act was committed in furtherance of the conspiracy *768 that caused injury' to [plaintiffs]."  *Siefert v. Hamilton County*, 951 F.3d 753, 767 (6th Cir. 2020) (quoting *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011)).  Count One fails because there are no facts alleged by Plaintiffs that any such agreement existed.  Plaintiffs' allegations are conclusory, only stating that Defendants conspired to deprive them of their property rights.  (ECF No. 19, PageID# 414-20).  Although Plaintiffs include the working relationships between the Defendants, they do not allege any facts supporting the allegation that Defendants agreed to violate Plaintiffs' constitutional rights.  Without specific allegations that Defendants entered into an agreement to deprive Plaintiffs of their rights, Count One fails to state a claim for relief as to Fairlawn, Roth, and Randles.  *Siefert*, 951 F.3d at 768 ("It is well-settled that conspiracy claims must be pled with some degree of specificity.") (quoting *Heyne v. Metropolitan Nashville Schools*, 655 F.3d 556, 563 (6th Cir. 2011) (editing mark omitted.)).

#### 2.  Conspiracy under Sections 1985(3)

A §1985(3) civil conspiracy claim requires a plaintiff to show "1) a conspiracy involving two or more persons; 2) for the purpose of depriving, directly or indirectly, a person or class of

persons of the equal protection of the laws; and 3) an act in furtherance of the conspiracy; 4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States." *Smith v. Thornburg,* 136 F.3d 1070, 1078 (6th Cir.1998) (citing *Johnson v. Hills & Dales Gen. Hosp.,* 40 F.3d 837, 839 (6th Cir.1994), *cert denied*).  The plaintiff must demonstrate that the conspiracy was motivated by a class-based animus, such as race.  J*ohnson, 40 F.3d at 839; see also Collyer, 98 F.3d at 233.*

Plaintiffs argue that they have properly asserted a 1985(3) claim as a "class of one."  (ECF No. 29, PageID# 772).  Equal Protection standards require a showing of both a discriminatory purpose and discriminatory effect.  *Royal oak Entertainment, LLC v. City of Royal Oak, Michigan,* 205 Fed.Appx. 389, 398 (6th Cir. 2006).  Because Plaintiffs claim they are a "class of one," they must show they have been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Id., (quoting Village of Willowbrook v. Olech,* 528 U.S. 562, 564, (2000)).  Plaintiffs' arguments are  conclusory; they fail to allege supporting facts that if taken as true, state a claim for relief.  (ECF No. 29, PageID# 772-74).

Plaintiffs state that there is no rational basis for Fairlawn, Roth, Randles, and Wilk to have intentionally treated them differently from "others similarly situated – Herhold and Rassavong." (*Id*. at PageID# 772-73).  However, Plaintiffs do not demonstrate that they were treated differently than others in this regard.  There are no allegations that Defendants prevented other property owners in the development from dumping fill from their property onto another property in the development, or that they allowed, facilitated, oversaw, participated in, or even knew of the dumping of fill onto a proper dumping site for other property owners in the development.

Plaintiffs claim that property owners on their street, and in their development, have been allowed to fill wetlands on their properties without obtaining a permit from the USACE or Ohio

EPA.  (ECF No. 19, PageID# 417; No. 19, PageID# 773).  This allegation, if taken as true, also fails.  First, The NOV issued to Plaintiffs states that Plaintiffs "have the option of applying for an After-The-Fact (ATF) Permit, or to restore the wetland to the approximate original conditions." (ECF No. 19-8, NOV at PageID #437).  Plaintiffs were given the opportunity to apply for the ATF Permit, which would have allowed them to leave their wetlands filled.  Plaintiffs allege no facts indicating that they applied, and they were denied. Second, Wilk is alleged to have unlawfully issued the NOV. (ECF No. 19, Am. Compl. at PageID #411).  Plaintiffs have not alleged facts that Wilk declined to issue NOVs to others similarly situated.

Finally, Plaintiffs have not alleged any facts, with specificity, that Defendants entered into an agreement or conspiratorial objective to deprive Plaintiffs of their constitutional rights.  *Siefert*, 951 F.3d at 768;  *Heyne*, 655 F.3d at 564.  Count Two fails to state a claim as to Fairlawn, Roth, and Randles.

### C. Section 1983 Takings Claims

#### 1. The statute of limitations for Section 1983 and 1985(3) claims brought in Ohio is two years.

Defendants argue that the takings claims alleged in Counts Four and Five are time-barred. (ECF No. 25, PageID # 461).  The statute of limitations for a claim for relief under § 1983 is governed by the statute of limitations for personal injury claims.  *Bowden v. City of Franklin, Kentucky*, 13 Fed.Appx 266,272 (6th Cir. 2001).  The Sixth Circuit has held that a two-year statute of limitations applies to §1983 claims in Ohio.  *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007) (citing *Banks v. City of Whitehall,* 344 F.3d 550, 553 (6th Cir.2003); *Browning v. Pendleton,* 869 F.2d 989 (6th Cir.1989) (en banc)).

"While statutes of limitations and tolling principles are governed by state law, the question of when a federal civil rights claim accrues remains one of federal law."  *Bowden v. City of*

15

*Franklin, Kentucky*, 13 Fed.Appx 266, 272 (6th Cir. 2001).  "In general, a civil rights claim for relief accrues when the plaintiff knows or has reason to know of the injury that is the basis of his action." (citing *Friedman v. Estate of Presser,* 929 F.2d 1151, 1159 (6th Cir.1991); citing *Sevier v. Turner,* 742 F.2d 262, 273 (6th Cir.1984)).  "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Sevier,* 742 F.2d at 273.

The following allegations are relevant to determining when Plaintiffs' claims accrued:

- Plaintiff alleged that SLC "obtained a 404 permit from the [USACE] on April 14, 2000, and a 401 permit from the OEPA…a copy of the 404 permit was provided to Fairlawn to obtain authorization to further subdivide the land designated on the plat as Block A." (ECF No. 19, PageID# 39).
- Plaintiff admits that "Fairlawn also required SLC to pay two additional sewer tap in fees when the 3 additional single family residential lots were approved on April 18, 2000." (*Id*.).
- Plaintiff alleges that the "February 28, 2006 [Google Earth] photo shows the dirt from the [Herhold Parcel] dumped on the [SLC Parcel] when it was removed the create the ditch.  This photo shows that the dirt was not 'properly removed' from the site as claimed by Wilk, Herhold, Rassavong, Fairlawn, Randles and Skidmore."  (*Id*. at PageID# 405).

As it relates to the need to obtain a permit from an appropriate wetlands regulatory agency in order to develop Block A, Defendants argue that Plaintiffs knew or had reason to know of this condition in 1999 and 2000 when it was established by the Fairlawn Planning Commission in granting approval of the proposed subdivisions.  (ECF No. 25, PageID# 467).  Plaintiffs argue that they knew of this condition, but did not know that Fairlawn intended to deny them use of the property.  (ECF No. 29, PageID# 767-68).  Based on the allegations and Plaintiffs' own admission that it was aware of the condition in 2000, the takings claims in Count 4 and 5 are time barred.

Plaintiffs argue that Fairlawn has continued to trespass by mowing the SLC Parcel since 2006.  (*Id*. at PageID# 768-769).  Plaintiffs argument that the trespass is continuing and therefore the limitations period is tolled also fails.  Defendants correctly argue that this allegation is

16

immaterial, as it was not alleged as one of the grounds for the taking claims. (ECF No. 32, PageID 877). Moreover, it is insufficient to establish a takings claim, because the mowing is authorized by law and Fairlawn as a political subdivision is entitled to immunity for claims under O.R.C. 2744.02. *Keene Grp., Inc. v. Cincinnati*, No. 1:19-CV-730-WOB, 2020 WL 3980304, *5 (S.D. Ohio July 14, 2020), aff'd, 998 F.3d 306 (6th Cir. 2021). *See Bojicic v. DeWine*, No. 3:21-CV-00630-JGC, 2021 WL 4977018, *13 (N.D. Ohio Oct. 27, 2021) (holding that takings claims cannot arise from the exercise of police powers) (citing cases); *Howard v. Preble Cty. Sheriff*, No. 3:18-CV-410, 2019 WL 3842446, *4 (S.D. Ohio Aug. 15, 2019) (same).

### 2.  Failure to State a Claim

Defendants argue that Counts Four and Five fail to state plausible takings claims against Fairlawn as a matter of law. (ECF No. 25, PageID# 469). In their Opposition, Plaintiffs failed to respond to this argument entirely. (*See* ECF No. 29). "Where a party fails to respond to an argument in a motion to dismiss, 'the Court assumes he concedes this point and abandons the claim.'" *USA Parking Sys., LLC v. E. Gateway Cmty. Coll.*, No. 4:20CV1967, 2022 WL 312230, at *5 (N.D. Ohio Feb. 1, 2022); *see also Humphrey v. U.S. Attorney Gen.'s Office*, 279 F. App'x 328, 331 (6th Cir. 2008); *Doe v. Bredesen*, 507 F.3d 998, 1007-1008 (6th Cir. 2007); *Ullmo v. Ohio Tpk. & Infrastructure Comm'n,* 126 F. Supp. 3d 910, 919 (N.D. Ohio 2015); *see Weatherby v. Fed. Express,* 454 Fed.Appx. 480, 490 (6th Cir.2012) (noting that a "[p]laintiff must ... make some effort at argumentation or presentation of facts" and absent such effort, plaintiff's claims are deemed waived). Accordingly, Counts Four and Five are abandoned and dismissed as to Fairlawn.

### D.  Supplemental Jurisdiction

Count Three is an Ohio law conspiracy claim against Fairlawn, Roth, Randles, Wilk, Herhold, and Rassavong. Plaintiffs allege that they conspired to obtain a civil judgment against Plaintiffs in Herhold Lawsuit Two based on fabrication of a need to properly remove overfill from

the Herhold Parcel.  (*Id*. at PageID# 418-20).  Plaintiffs bring this claim pursuant to 28 U.S.C. § 1367, alleging this Court has supplemental jurisdiction over the state conspiracy claim.  (*Id*.).

District courts have "supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).  "The district courts may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction." *Id*.  "If the federal claims are dismissed before trial, the state claims generally should be dismissed as well."  *Wojnicz v. Davis*, 80 Fed.Appx. 382, 384–85 (6th Cir. 2003) (citing *Taylor v. First of Am. Bank-Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992)).  Because this Court dismisses all federal claims against Defendants, this Court declines to exercise supplemental jurisdiction over Count Three.  Count Three is dismissed as to Farilawn, Roth, and Randles.

### E.  Counts Seven and Nine

Defendants argue that Counts Seven and Nine must be dismissed because they do not constitute independent causes of action.  (ECF No. 25, PageID# 461).  Indeed, injunctive relief is a remedy, not a cause of action.  *Goryoka v. Quicken Loan, Inc.*, 519 Fed.Appx 926, 929 (6th Cir. 2013).  A request for an injunction is only cognizable when paired with some recognized cause of action.  *Jarbo v. Bank of New York Mellon*, 587 Fed.Appc 287, 290 (6th Cir. 2014).  Plaintiffs' request for injunction in Count Seven seeks to enjoin the enforcement of the NOV or penalization based on the NOV.  (ECF No. 19, PageID# 424).  Although Count Seven is against Fairlawn, Ohio EPA, and Wilk, Fairlawn did not issue the NOV.  (Id. at PageID# 409).  Therefore, the request for injunction is not paired with a cause of action against Fairlawn.  Similarly, the punitive damages sought in Count Nine are a remedy, not an independent cause of action.  *Calvey v. Stifel, Nicolaus & Company, Inc.*, 850 Fed.Appx 344, 350 (6th Cir. 2021); *Hitachi Med. Sys. Am., Inc. v. Branch*,

No. 5:09-cv-01575, 2010 WL 816344, *11 (N.D. Ohio Mar. 4, 2010); *Niskanen v. Giant Eagle, Inc.*, 122 Ohio St.3d 486, 912 N.E.2d 595, 599 (2009).  Count Seven is dismissed as to Fairlawn and Count Nine is dismissed as to Fairlawn, Roth, and Randles.

### IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** City of Fairlawn, Mayor William J. Roth, and Christopher Randles' Motion to Dismiss (ECF No. 25) and Plaintiffs' claims are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Dated: March 13, 2024

_____

CHARLES E. FLEMING
U.S. District Court Judge

19