**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SMITH LAND COMPANY, INC., et al., | ) | CASE NO. 5:21-cv-01848 |
| | ) | |
| Plaintiffs, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM  ORDER  AND** |
| THE CITY OF FAIRLAWN, OHIO, et al., | ) | **OPINION** |
| | ) | |
| Defendants. | ) | |

Before the Court is Defendant Shawn Herhold ("Herhold") and Defendant Malavanh Rassavong ("Rassavong") (collectively "Defendants") Motion to Dismiss (ECF No. 27) Plaintiffs' Smith Land Company ("SLC") and Robert G. Smith's ("Smith") (collectively "Plaintiffs") Amended Complaint (ECF No. 19).  For the reasons discussed below, the Motion is **GRANTED**.

**I.    BACKGROUND**

**A.  Factual Background**

The allegations in this action arise from the subdivision, sale, designation as wetlands of, and fill material placement on real property owned by Plaintiffs.  (ECF No. 19., Am. Compl. at PageID #389).  Plaintiffs' allegations are as follows:

**1.  Purchase and Subdivision of the Property**

SLC purchased and sought to subdivide 9.7 acres of real property on Brunsdorph Drive in Fairlawn, Ohio (the "Property") in 1999.  (*Id.* at PageID #390-91).  To do so, SLC applied to Defendant City of Fairlawn ("Fairlawn") to subdivide the property into ten single-family residential lots and Block A.  (*Id.* at PageID #391).  Fairlawn determined the Property contained isolated wetlands, subject to the jurisdiction of the United States under the Clean Water Act (the "CWA").  (*Id.*).  To subdivide the Property, Fairlawn required a 404 Permit from the U.S. Army Corps of Engineers (the "USACE") to fill or impact the isolated wetlands.  (*Id.*).  On April 14,

2000, SLC obtained a 404 Permit from the USACE and a 401 Permit from the Ohio EPA, both of which were valid until February 11, 2002.  (*Id*.).

When SLC sought to further subdivide Block A into three single-family residential parcels, it provided a copy of the 404 Permit to Fairlawn.  (*Id*.).  Fairlawn approved the subdivision of Block A on April 18, 2000 and SLC filed deeds approved by Fairlawn subdividing Block A into three parcels on May 19, 2000.  (*Id*.).  Fairlawn required SLC to pay three additional sewer tap fees for the three additional single-family residential parcels.  (*Id.*).

### 2.  Supreme Court Decision

On January 9, 2001, the Supreme Court decided *Solid Waste Agency of Northern Cook Cty. v. Army Corps of Engineers*, 531 U.S. 159 (2001).  (*Id*.).  The Supreme Court held that the migratory bird rule, which purported to extend jurisdiction of isolated wetlands on the Property to the USACE, exceeded the authority granted under the CWA.  (*Id*.).  Thus, the isolated wetlands on the Property were no longer within the jurisdiction of the USACE.  (*Id*. at PageID #392).

### 3.  Fairlawn Fills Block A

In February 2001, a road contractor for Fairlawn dumped fill on two parcels in Block A.  (*Id*. at PageID #391-92).  Smith complained to Fairlawn that the dumping was unauthorized, and Fairlawn sent the contractor to grade the dumped fill.  (*Id*. at PageID #392).  Plaintiffs allege they were never given the opportunity to challenge Fairlawn's dumping of fill.  (*Id*. at PageID #400).  On July 17, 2001, Ohio enacted a permanent permitting process for impacting isolated wetlands, O.R.C. § 611.02-029.  (*Id*.).

#### 4.  Sale of Property

Defendants Shawn A. Herhold ("Herhold") and Malavanh D. Rassavong ("Rassavong") contracted to purchase a Block A parcel (the "Herhold Parcel") on July 11, 2002. (*Id*.).  The contract included a disclosure noting the Herhold Parcel had been designated as a wetland. (*Id*.).  On March 26, 2003, Timothy and Dawn Kensinger (collectively the "Kensingers") contracted to purchase a Block A parcel (the "Kensinger Parcel"). (*Id*. at PageID #393).  The contract did not include a disclosure noting that the Kensinger Parcel had been designated as a wetland. (*Id*. at PageID #394).

In November 2003, William J. Roth ("Roth"), Mayor of Fairlawn, wrote the USACE inquiring as to whether future owners of the Block A parcels would have to acquire USACE authorization to impact wetlands on the parcels. (*Id*. at PageID #393).  The USACE responded on February 4, 2004, stating that a USACE permit was not required for impacts to wetlands on Block A and advising to contact the Ohio EPA to determine the state permit requirements.[1] (*Id*.).  On February 9, 2004, the Ohio EPA informed Fairlawn that owners of the Block A parcels will need to apply for and receive an Isolated Wetland Permit ("IWP") before impacting isolated wetlands.[2] (*Id*. at PageID #393-34).

#### 5.  The Kensinger Lawsuit

The Kensingers applied to Fairlawn for a building permit and Fairlawn denied the application, requiring the fill previously deposited by Fairlawn's contactor to be removed. (*Id*. at PageID #394).  The Kensingers sued Plaintiffs for breach of contract, stating that they were not aware that the Kensinger Parcel was a designated wetland that required a USACE permit in order to obtain a building permit from Fairlawn. (*Id*.).  Plaintiffs settled with the Kensingers and bought

the Kensinger Parcel back upon learning that its realtor did not provide the Kensingers with the wetland disclosure.  (*Id*.).

### 6.  Herhold Lawsuit One

On May 9, 2008, Herhold and Rassavong sued Plaintiffs for breach of contract and fraud in state court.  (*Id*. at PageID #395).  The Plaintiffs refused to buy the Herhold Parcel back because Herhold and Rassavong were provided with a wetland disclosure, a USACE permit was issued for the fill Fairlawn's contractor dumped on the parcel, and Fairlawn authorized the dumping.  (*Id*.).  Plaintiffs moved to dismiss and were denied. (*Id*.).  In 2014, the case went to trial and resulted in a judgment in favor of Herhold and Rassavong.  (*Id*.).  Thereafter, the judge recused, and a new trial was ordered.  (*Id*.).

### 7.  Ohio EPA Public Records

After Herhold Lawsuit One, on May 4, 2015, Smith made a public records request to the Ohio EPA for all records of its employee, Defendant Ed Wilk ("Wilk").  (*Id*. at PageID #398).  Included in the records were Wilk's calendar, notes, and letters.  (*Id*. at PageID #399).

#### a.    The Wilk-Randles Letter

Wilk met with Herhold and Rassavong at the Herhold Parcel on May 27, 2005.  (*Id*.).  On May 31, 2005, Wilk wrote a letter ("Wilk-Randles Letter") to Defendant Chris Randles ("Randles"), an employee of the Fairlawn Building and Zoning Department.[3] (*Id*.).  The Wilk-Randles Letter stated that after walking the Herhold Parcel, Wilk determined that the fill was mostly on the neighboring property to the north of the Herhold Parcel and some fill activity occurred on the north boundary of the Herhold Parcel.  (*Id*.).  Wilk also stated the amount of over-fill on the Herhold Parcel is minimal compared to the adjacent property and removal of the over-

fill is not required as long as the area is used as a buffer zone between the fill permitted on the Herhold Parcel and the wetlands that should not have been filled. (*Id*.).  Plaintiffs allege the Wilk-Randles Letter was sent to Herhold.  (*Id*.).

### b.      The Wilk-Herhold Letter

On October 24, 2005, Wilk wrote Herhold ("Wilk-Herhold Letter").[4]  (*Id*. at PageID #400).  The Wilk-Herhold Letter stated that the fill previously dumped on the Herhold Parcel failed to comply with the USACE limits.  (*Id*.).  It further stated that SLC overfilled the wetlands at the north property boundary and, since then, the wetlands have been determined to be regulated by the Ohio EPA.  (*Id*.).  Wilk further stated "your decision was to have the excessive fill properly removed off site.  I have visited the site numerous times providing direction during the project."  (*Id*.).  He also stated that he visited the Herhold Parcel on the date of the letter to inspect the work and the excess fill was removed, but it must also meet the conditions and approval of the Fairlawn Building and Zoning Department.  (*Id*.).

Plaintiffs allege they were never notified of a claim of overfill on the Herhold Parcel, any violation of the USACE permit and/or the Ohio EPA regulation, or any enforcement action being taken due to the overfill.  (*Id*. at PageID #400, 403).  They allege they first learned of the overfill when they were served with a copy of the complaint for Herhold Lawsuit One.  (*Id*. at PageID #403).

### c.      The Wilk-White Tail Letter

On March 28, 2007, Wilk wrote to a property owner on White Tail Ridge Road in Fairlawn regarding the property owner's concern about the wetlands behind the homes on White Tail Ridge Road that border the homes on Brunsdorph Road ("Wilk-White Tail Letter").[5]  (*Id*. at PageID

#409).  Wilk stated he visited the area on March 21, 2007 and verified the conditions of the wetlands.  (*Id*.).  He also stated that the USACE issued a permit allowing the fill of wetlands along the properties on Bunsdorph Road and any additional impacts to wetlands will require a 401 permit from the Ohio EPA.  (*Id*.).

### d.  Notice of Violation

On February 24, 2016, Wilk issued a Notice of Violation ("NOV") against Plaintiffs for unauthorized fill on both of the Block A parcels they owned.[6]  (*Id*.).  Plaintiffs allege that Wilk issued the NOV in retaliation for Plaintiffs' public records request.  (*Id*.).  Plaintiffs allege the NOV was mailed to Smith at an old address, where he no longer resided, and he did not receive it.  (*Id*.).  Plaintiffs allege that Wilk issued the NOV to deliberately and unlawfully encumber Plaintiffs' parcels so that they could not be used for a single-family residence and prevent Plaintiffs from marketing and selling their parcels.  (*Id*. at PageID #411).

### 8.  Herhold Lawsuit Two

The second trial was in July 2017.  (*Id*.).  Wilk was designated as the Ohio EPA's representative.  (*Id*.).  Wilk testified that he is an Ohio EPA 401 coordinator, and his job duties include reviewing 401 permit applications, conducting pre-application meetings, reviewing complaints of unauthorized fill, and enforcement.  (*Id*. at PageID #398).  Wilk also testified to the measurements of the overfill and that mitigation was available in 2005 for $35,000 per acre, approximately $442 for the Herhold Parcel. (*Id*. at PageID #403).  Plaintiffs allege they were not notified of Wilk's involvement with the Herhold Parcel.  (*Id*.).  Wilk also testified that the USACE would handle any violations on the Herhold Parcel until 2004.  (*Id*. at PageID #410).

On September 19, 2017, the court issued a final order of judgment for Herhold and Rassavong. (*Id.*).  Plaintiffs filed a motion for judgment notwithstanding the verdict and new trial that was denied on November 30, 2017.  (*Id.*).  The Ohio Ninth District Court of Appeals affirmed the judgment on June 19, 2019.  (*Id.*).  The Ohio Supreme Court declined jurisdiction on October 15, 2019, and the U.S. Supreme Court denied certiorari on June 8, 2020.  (*Id.*).

### 9.   Post-Lawsuit

After the second Herhold trial, on September 28, 2017, Plaintiffs allege that they received two Google Earth Pro photos (the "Block A Photos"), dated April 9, 2005 and February 28, 2006, respectively. (*Id.* at PageID #404).  Plaintiffs allege the Block A Photos show what Block A looked like before Herhold and Rassavong removed the overfill from the Herhold Parcel and after. (*Id.* at PageID #404-05).  Plaintiffs assert the Block A Photos show that dirt from the Herhold Parcel was improperly removed and dumped on SLC's parcel. (*Id.* at PageID #405).  Plaintiffs contend that Wilk oversaw the improper removal of dirt from the Herhold Parcel and dumping on SLC's parcel.  (*Id.*).  Plaintiffs claim the Block A Photos also show that homes built to the south of the Herhold Parcel have filled in wetlands.  (*Id.*).  Plaintiffs aver that the Block A Photos support their claim that Fairlawn, Roth, Randles, Wilk, Herhold, and Rassavong engaged in conduct that constitute or contributed to trespass on their parcel.  (*Id.* at PageID #406).

Plaintiffs allege that beginning in 2006, Fairlawn began mowing the grass on SLC's parcel, and has since assessed hundreds of dollars in special assessment taxes a year on SLC's parcel in addition to sewer tap fees Plaintiffs paid Fairlawn. (ECF No. 19, PageID# 411-12). Plaintiffs claim that they never received a bill for mowing or taxes owed on the SLC parcel. (Id. at PageID# 412). On February 10, 2021, Fairlawn filed tax foreclosure action on the SLC parcel for the Summit County Land Reutilization Corporation ("SCLRC") to acquire it. (Id.). The SCLRC determined

7

the land was nonproductive and the acquisition of the land was necessary for the implementation of an effective land reutilization program. (Id.). Plaintiffs aver that Fairlawn's refusal to allow the land to be "productive" is the sole reason for the tax delinquency. (Id. at PageID# 413).

### 10. Claims Against Herhold and Rasssavong

Count One of the Amended Complaint is brought under 42 U.S.C. § 1983, and alleges that Fairlawn, Roth, Randles, Wilk, Herhold, and Rassavong conspired to deprive Plaintiffs of their interest in the Property. (ECF No. 19, PageID #414-16).

Count Two of the Amended Complaint is brought under 42 U.S.C. § 1985(3), and alleges that Fairlawn, Roth, Randles, Wilk, Herhold, Rassavong, and Skidmore[1] conspired to deprive Plaintiffs of equal protection of the law by conspiring to deprive them of their interest in the Property. (Id. at PageID #417-18).

Count Three of the Amended Complaint is brought under 28 U.S.C. § 1367 for civil conspiracy under Ohio law. (Id. at PageID #418). Plaintiff alleges that Fairlawn, Roth, Randles, Wilk, Herhold, and Rassavong conspired to obtain a civil judgment against Plaintiffs in Herhold Lawsuit Two, based on fabrication of a need to properly remove overfill from the Herhold Parcel. Plaintiffs allege a conspiracy to commit fraud, trespass, and take property, including a judgment against Plaintiffs for $284,889.29 plus interest. (Id. at PageID #418-20).

Count Eight of the Amended Complaint is brought under 28 U.S.C. § 1367 for trespass under Ohio law. (Id. at PageID #418). Plaintiffs allege that Herhold and Rassavong "knowingly trespassed on SLC and Smith's land by dumping fill, grading the fill, and seeding the dirt on the

---

[1] Skidmore is not a named Defendant in this action.

8

SLC Parcel." (*Id.* at PageID #425).  Plaintiffs allege damages by this trespass as they have been denied the right to possess, to use, to exclude, to profit and to dispose of the land.  *Id.*

Count Nine of the Amended Complaint is a request for exemplary punitive damages against Fairlawn, Roth, Randles, Wilk, Herhold, and Rassavong for their alleged conduct constituting "conspiracy to commit fraud, trespass, and taking of [their parcels]," and denying Plaintiffs "of equal protection of the law to commit trespass and the physical taking of [their parcels]." (*Id*. at PageID #425-26).

### B. Procedural Background

Plaintiffs filed this action on September 28, 2021.  (ECF No. 1, Compl.).  Plaintiffs subsequently filed an Amended Complaint on December 27, 2021.  (ECF No. 19, Am. Compl.).  Defendants filed their Motion to Dismiss the Amended Complaint (ECF No. 27) on January 14, 2022.  Plaintiffs filed their Opposition (ECF No. 30) on February 14, 2022.  Defendants filed their Reply in Support of the Motion (ECF No. 33) on February 28, 2022.

## II.    LEGAL STANDARD

### A. Federal Rule of Procedure 12(b)(6)

A party may move to dismiss a claim against it when the claimant has "failed to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A 12(b)(6) motion to dismiss tests the complaint's legal sufficiency.  *Riddle v. Egensperger*, 266 F.3d 542, 550 (6th Cir. 2001).  A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the Complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007).  A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).  The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the

Complaint are true.  *Bell Atl. Corp.*, 550 U.S. at 555.  The Plaintiff is not required to include

detailed factual allegations, but must provide more than "an unadorned, the-Defendant-unlawfully-

harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A pleading that offers legal conclusions or a

simple recitation of the elements of a cause of action will not meet this pleading standard.  *Id*.  In

reviewing a Complaint, the Court must construe the pleading in the light most favorable to the

Plaintiff.  *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir.1998).

## B.  Federal Rule of Procedure 12(c)

"After the pleadings are closed–but early enough not to delay trial–a party may move for

judgment on the pleadings."  Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings

essentially constitutes a delayed motion under Rule 12(b)(6) and is evaluated under the same

standard.  *See, e.g.*, *Holland v. FCA US LLC*, 656 F. App'x 232, 236 (6th Cir. 2016).  Judgment on

the pleadings is appropriate where, construing the material allegations of the pleadings and all

reasonable inferences in the light most favorable to the non-moving party, the Court concludes

that the moving party is entitled to judgment as a matter of law.  *Anders v. Cuevas*, 984 F.3d 1166,

1174 (6th Cir. 2021).  In construing the pleadings, the Court accepts the factual allegations of the

non-movant as true, but not unwarranted inferences or legal conclusions. *Holland*, 656 F. App'x at

236–37 (citing *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)).

On a motion under Rule 12(c), courts "must follow the Supreme Court's changes to the

pleading standards in *Ashcroft v. Iqbal*, 556 U.S. 662 [129 S.Ct. 1937, 173 L.Ed.2d 868] (2009),

and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 [127 S.Ct. 1955, 167 L.Ed.2d 929] (2007)."  *Bates*

*v. Green Farms Condo. Assoc.*, 958 F.3d 470, 480 (6th Cir. 2020) (citing *Engler v. Arnold*, 862

F.3d 571, 575 (6th Cir. 2017)).  Only "well-pleaded factual allegations" that "plausibly give rise

to an entitlement of relief" and "allow the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged" will survive.  *Id.* (quotation and citation omitted).  Conversely,

"[m]ere labels and conclusions are not enough[.]" *Engler*, 862 F.3d at 575.  Nor are facts that are

"merely consistent with" liability.  *Bates*, 958 F.3d at 480 (quotation omitted).

**III.    Law and Analysis**

**A.  *Res Judicata* bars Plaintiffs' claims**

Defendants argue that the Plaintiffs' claims are barred by the *res judicata* doctrine of claim

preclusion.  (ECF No. 27, PageID# 620).  Claim preclusion generally refers to the effect of a prior

judgment in foreclosing successive litigation of the very same claim, whether or not relitigation of

the claim raises the same issues as the earlier suit."  *New Hampshire v. Maine*, 532 U.S. 742, 748-

49, 121 S.Ct. 1808, 1814 (2001).  Under the doctrine of claim preclusion, a federal court must give

a state court judgment the same preclusive effect it would have in the courts of the rendering state.

*Dubuc v. Green Oak Tp.*, 312 F.3d 736, 744 (6th Cir. 2002).

"Pursuant to the doctrine of *res judicata*, 'a final judgment on the merits bars further claims

by parties or their privies based on the same cause of action.'"  *Bragg v. Flint Bd. of Educ.*, 570

F.3d 775, 776 (6th Cir. 2009); quoting *Montana v. United States*, 440 U.S. 147, 153 (1979).  The

term "*res judicata*" literally means "a thing adjudged" or "a matter decided." 46 Am. Jur. 2d

Judgments § 442.  When one court has already resolved the merits of a case, another court will not

revisit them.  *Id.*  The doctrine of *res judicata* therefore precludes a party from bringing a

subsequent lawsuit on the same claim or from raising a new defense to defeat the prior judgment.

*Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 660 (6th Cir. 1990).  It

bars relitigation of every issue actually brought before the court and every issue or defense that

should have been raised in the previous action.  *Id.*

In order to prevail on a *res judicata* defense, a defendant must show there was: "1) a final

decision on the merits by a court of competent jurisdiction; 2) a subsequent action between the

same parties or their 'privies'; 3) an issue in the subsequent action which was litigated or which

11

should have been litigated in the prior action; and 4) an identity of the causes of action." *Bragg*, 570 F.3d at 776; citing *Bittinger v. Tecumseh Products Co.*, 123 F.3d 877, 880 (6th Cir.1997).

### 1. There was a final decision on the merits by a court of competent jurisdiction.

Herhold Lawsuit Two was tried in July 2017 and a final order granting judgment for Herhold and Rassavong was filed on September 19, 2017.  (ECF No. 19, PageID #395).  Plaintiffs have exhausted all appeals in Herhold Lawsuit Two.  (*Id.*).

Plaintiffs contend that the final decision in Herhold Lawsuit Two was based on fraud.  (ECF No. 30, PageID #792).  Plaintiffs allege that Defendants fraudulently represented that they were required to remove excessive fill from their parcel and that the jury relied on their testimony.  (ECF No. 19, PageID #419).  The doctrine of *res judicata* requires a final decision on the merits, *without fraud or collusion*, by a court of competent jurisdiction.  *Davis v. Sun Oil Co.*, 148 F.3d 606, 611 (6th Cir. 1998) (emphasis added).  Fraud by a party does not undermine the finality of judgment unless the fraud was extrinsic and deprived the opposing party of the opportunity to appear and present their case.  63 Ohio Jur. 3d Judgments § 391.

In both Herhold Lawsuit One and Herhold Lawsuit Two SLC and Smith were not deprived of an opportunity to appear and present their case.  Herhold Lawsuit Two was tried to a jury which rendered a decision in favor of Defendants.  (ECF No. 19, PageID #395).  All appeals were exhausted in Herhold Lawsuit Two when the United States Supreme Court denied Certiorari on June 8, 2020.  (*Id.*).  The first element is satisfied by the final order of judgment rendered in Herhold Lawsuit Two.

### 2. Both actions are between the same parties

Herhold Lawsuit Two involved Defendants in this action, Herhold and Rassavong, and Plaintiffs in this action, SLC and Smith.  (ECF No. 27-1, PageID #632).  Plaintiffs contend that

the current action does not involve the same parties, as the claims in the current action include the additional Defendants Fairlawn, Roth, Randles, and Wilk.  (ECF No. 30, PageID #793).

The relevant inquiry as to this element is whether the Plaintiffs and Defendants were opposing parties in the first action.  *United States ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 416 (6th Cir. 2016).  The existence of additional defendants in subsequent litigation does not affect this analysis.  *Randles v. Gregart*, 965 F.2d 90, 92 (6th Cir. 1992) (affirming claims against defendants, who were sued by plaintiff in prior litigation, were barred in subsequent litigation naming the same two defendants and additional parties); *White v. Stotts*, No. 2:11-cv-153, 2011 U.S. Dist. LEXIS 150412, 2011 WL 6941700, at *4 (S.D. Ohio Dec. 6, 2011) ("[T]he instant action involves the same parties, *i.e.*, plaintiff and the Bank, as did the state court action.  That plaintiff added three other defendants in this action does not change this fact.").

The addition of Fairlawn, Roth, Randles, and Wilk does not change the fact that Plaintiffs and Defendants were opposing parties in the preceding Herhold Lawsuits One and Two. The second element is satisfied.

### 3. The issues in this action were or should have been previously litigated.

The claims presented by Plaintiffs in the instant action have already been litigated in Plaintiffs' Motion for Judgment Nothwithstanding the Verdict and/or In The Alternative Motion for New Trial and their appeal of Herhold Lawsuit Two.  (ECF No. 33-1).

Claim preclusion applies to bar the parties from relitigating issues that were either previously litigated or could have been raised in an earlier action.  *J.Z.G. Resources v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir. 1996).  "Under claim preclusion, a final judgment on the merits bars any and all claims by the parties or their privies based on the same cause of action, as to every matter actually litigated and as to every theory of recovery that could have been presented." *Haddad v. Mich. Nat'l Corp.*, 34 Fed. Appx. 217, 218 (6th Cir. 2002).

13

Plaintiffs allege that Defendants conspired with Fairlawn, Roth, Randles, and Wilk to dump fill from their lot onto the SLC Parcel.  (ECF No. 19, PageID #416).  Plaintiffs assert that they were unaware of the alleged conspiracy and trespass pertaining to the SLC Parcel until after Herhold Lawsuit Two.  (ECF No. 30, PageID #793).  Plaintiffs state that satellite photos were obtained on September 28, 2017, nine days after the order granting judgment for  Defendants in Herhold Lawsuit Two, which demonstrated that the fill from the Herhold Parcel was dumped, graded, and seeded on the SLC Parcel.  (ECF No. 19, PageID #417).

The Plaintiffs' Motion for Judgment Nothwithstanding the Verdict and/or In The Alternative Motion for New Trial relied on the satellite photos as newly discovered evidence allowing for a new trial.  (ECF No. 33-1, PageID #910-913).  That motion was denied on November 30, 2017.  (ECF No. 19, PageID #395).  The Ninth District Court of Appeals also addressed the satellite photos in the Plaintiffs' appeal of Herhold Lawsuit Two.  *Herhold v. Smith Land Co.*, 2019-Ohio-2418, *P91 (9th Cir. 2019).  The court stated Plaintiffs had "not explained why this newly discovered evidence could not have been discovered before trial, particularly given the age of the photos that they claim are newly discovered." *Id*.  Plaintiffs' claims have already been litigated in state court and element three is satisfied.

### 4. An identity of cause of action

An identity of cause of action is shown "if the claims arose out of the same transaction or series of transactions, or if the claims arose out of the same core of operative facts." *Trustees of Operating Engineers Local 324 Pension Fund v. Bourdow Contracting*, Inc., 919 F.3d 368, 383 (6th Cir. 2019); (quoting *Winget v. JP Morgan Chase Bank*, 537 F.3d 565, 580 (6th Cir. 2008)). "If there is an identity of 'the facts creating the right of action and of the evidence necessary to sustain each action,'" element four's evidentiary component looks to "whether the same underlying factual evidence could support and establish both [claims]." *Bourdow Contracting*,

919 F.3d at 383-84; (quoting *Sanders Confectionery Prods., Inc. v. Heller Financial*, Inc., 973

F.2d 474, 484 (6th Cir. 1992) and *Heike v. Cent. Mich. Univ. Bd. of Trs.*, 573 F. App'x 476, 483

(6th Cir. 2014) (The critical consideration for determining whether two suits involve the same

claim or cause of action is the operative "factual overlap" between the claims); (quoting *United*

*States v. Tohono O'odham Nation*, 563 U.S. 307, 315, 131 S.Ct. 1723, 179 L.Ed.2d 723 (2011)).

Herhold Lawsuit One and Two arose out of Defendants' transaction with Plaintiffs to

purchase the Herhold Parcel.  (EFC No. 30. PageID #793).  Plaintiffs contend that Defendants'

subsequent involvement in conspiracy and trespass on the SLC Parcel does not occur out of that

transaction. (*Id.*).  However, Defendants' purchase of the Herhold Parcel, and subsequent removal

of fill from that parcel, form the basis of Plaintiffs' conspiracy and trespass complaints against

Defendants.  (*Id.* at 415-17).  Plaintiffs allege that Defendants conspired to remove fill from the

Herhold Parcel and trespass in dumping the fill on the SLC Parcel.  (ECF No. 19, PageID #415).

These claims arise out of the same real estate transaction as that of Herhold Lawsuit One and Two.

Element four is satisfied.

Plaintiffs' claims are barred by the *res judicata* doctrine of claim preclusion.  Thus, Counts

One and Two are dismissed as to Herhold and Rassavong.

**B.  Supplemental Jurisdiction**

Count Three is an Ohio law conspiracy claim against Fairlawn, Roth, Randles, Wilk,

Herhold, and Rassavong.  Plaintiffs allege that they conspired to obtain a civil judgment against

Plaintiffs in Herhold Lawsuit Two based on fabrication of a need to properly remove overfill from

the Herhold Parcel.  (*Id*. at PageID #418-20).  Count Eight is an Ohio law trespass claim against

Defendants.  Plaintiffs allege that Defendants knowingly trespassed on SLC and Smith's land by

dumping fill, grading the fill, and seeding the dirt on the SLC Parcel.  (*Id.* at PageID #425).

15

Plaintiffs bring these claims pursuant to 28 U.S.C. § 1367, alleging this Court has supplemental jurisdiction over the state conspiracy and trespass claims.  (*Id*. at PageID #418-20, 425).

District courts have "supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C.  § 1367(a).  "The district courts may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction."  *Id*.  "If the federal claims are dismissed before trial, the state claims generally should be dismissed as well."  *Wojnicz v. Davis*, 80 Fed.Appx. 382, 384–85 (6th Cir. 2003) (citing *Taylor v. First of Am. Bank-Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992)).  Because this Court dismisses all federal claims against Defendants, this Court declines to exercise supplemental jurisdiction over Counts Three and Eight.  Counts Three and Eight are **DISMISSED** as to Herhold and Rassavong.

### C.  Punitive Damages

Count Nine is a claim for punitive damages.  Punitive damages are not an independent cause of action in Ohio.  *Calvey v. Stifel, Nicolaus & Company, Inc.*, 850 Fed.Appx 344, 350 (6th Cir. 2021); *Hitachi Med. Sys. Am., Inc. v. Branch*, No. 5:09-cv-01575, 2010 WL 816344, *11 (N.D. Ohio Mar. 4, 2010); *Niskanen v. Giant Eagle, Inc.*, 122 Ohio St.3d 486, 912 N.E.2d 595, 599 (2009).  A civil cause of action may not be maintained in Ohio solely for punitive damages.  *Niskanen,* 122 Ohio St. at 489 (quoting *Bishop v. Grdina*, 20 Ohio St. 3d 26, 485 N.E.2d 704, 705 (Ohio 1985), *superseded on other grounds by change to* Ohio Civ. R. 54(C)).  Count Nine is **DISMISSED** as to Herhold and Rassavong. "

### IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Herhold's and Defendant Rassavong's Motion to Dismiss (ECF No. 27) and Plaintiffs' claims are **DISMISSED WITH**

**PREJUDICE**.  Defendant Herhold's and Defendant Rassavong's Motion to Declare Plaintiffs

SLC and Smith Vexatious Litigators is **DENIED** as **MOOT**.

      **IT IS SO ORDERED.**

Dated: March 22, 2024

_____

CHARLES E. FLEMING
U.S. District Court Judge